NOT FOR FULL-TEXT PUBLICATION
File Name: 14a0075n.06
Nos. 13-5075; 13-5076

FILED
Jan 28, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DANIEL GALLEGOS; | ) | COURT FOR THE WESTERN |
| CARMELO ESTRADA, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE:     SUHRHEINRICH, SILER and KETHLEDGE, Circuit Judges.

**SUHRHEINRICH, J.**  Defendants Daniel Gallegos and Carmelo Estrada appeal their jury convictions for conspiracy to distribute at least 1000 kilograms of marijuana and the sentences imposed. For the following reasons, we **AFFIRM.**

## I.     Background

Through confidential sources, intercepted telephone conversations, and surveillance, Drug Enforcement Agents learned that Vernon Taylor was operating a marijuana drug trafficking organization in the Memphis, Tennessee area.  The Taylor organization used a Memphis warehouse to offload shipments of marijuana that had been transported in tractor trailer commercial vehicles.  Johnson McBride, a warehouse employee, was paid to allow the organization to unload the marijuana from the commercial vehicles into vans or pickup trucks driven inside the warehouse after normal business hours.  Sometimes the marijuana was hidden behind a false wall inside the trailer, sometimes it was disguised as a legitimate load.  Sometimes

1

payment money was placed inside a false wall inside the trailer, where the marijuana had been hidden. Defendants Estrada and Gallegos were drivers of the tractor trailers.

Taylor testified that the marijuana loads, which numbered between 800 and 2000 pounds, always arrived in tractor trailers. Taylor stated that the first load was hidden behind a false wall, that the return payment was hidden in the false compartment, and that it was seized by law enforcement. Taylor also testified that one load of marijuana was hidden in a stack of doors.

Just prior to May 12, 2011, DEA agents intercepted calls through an authorized wiretap on Taylor's phone regarding a load that was due to arrive in Memphis. Agents set up surveillance at the warehouse on May 12, 2011. The agents watched as Defendant Estrada arrived in a tractor trailer and backed up to the loading doors. Estrada went inside the warehouse for 15 to 20 minutes, returned to the loading area, closed the doors to the trailer, and left in the commercial vehicle.

The agents asked members of the West Tennessee Drug Task Force to conduct a stop of Estrada's vehicle once he left the city. Trooper David Montgomery stopped the vehicle outside the city for speeding. During the course of the traffic stop, Montgomery noticed that Estrada possessed the seal that should have been on the back of the trailer. At that point, Montgomery examined the contents of the trailer to see if any improper contents had been added to the load. Montgomery observed obvious signs of a hidden compartment in the nose of the trailer. Once the screws were removed, officers discovered a hidden compartment containing a box with roughly $635,000 in cash.

Upon his arrest, Estrada told David Lytal, a supervisor with the West Tennessee Drug Task Force, that his employer, Upward Transportation, had instructed him to stop in West Memphis, Arkansas, to allow an unknown individual to have the truck for a short time. Estrada

said he later found the vehicle in a parking lot and had to break into it because the keys had been locked in the cab. Lytal saw no signs of forced entry, however.

Just prior to June 11, 2011, agents intercepted calls on Taylor's phone regarding another delivery of marijuana. They surveilled the warehouse. Defendant Gallegos backed up a tractor trailer to the loading bay door, and then opened the doors of the trailer. Several vehicles arrived, drove into the warehouse, remained a brief time, and then exited. After leaving the warehouse in the commercial vehicle, Gallegos headed for Arkansas. DEA agents asked the Arkansas state police to stop the commercial vehicle. Officers inspected it at a weigh station near Hope, Arkansas. The officers thought that the bill of lading appeared suspicious (because it failed to list the correct shipper, appeared altered, and listed an incorrect pick up date) and obtained consent from Gallegos to search the trailer. A drug dog also alerted to the presence of narcotics around the outside of the vehicle. Inside the trailer, officers found a pallet containing several Lowe's boxes, rather than those of a shipper, and most were empty. They also found $998,000 hidden in a false compartment in a stack of doors. Gallegos told the officers that he did not know what he was carrying. He also stated that he was transporting plumbing supplies. Later, Gallegos told a cellmate, Roderick Daniels, that he worked for a drug cartel, had driven to Memphis to pick up currency, and had been stopped in Hope, Arkansas, where the money was discovered.

Defendants (and 24 others) were charged with conspiracy to distribute at least 1000 kilograms of marijuana, in violation of 21 U.S.C. § 846. Estrada filed a motion to suppress "all evidence seized as the result of a search of the defendant and a home, a vehicle, and all statements either written or oral made after the arrest of the defendant." Pg ID #935. The district court denied it because the motion was "phrased in such general terms as to render legal response

3

impossible." Pg ID #953 (internal quotation marks omitted). The government filed informations pursuant to 21 U.S.C. § 851 listing each defendant's prior drug convictions. Vernon Taylor and Johnson McBride, along with several officers and agents, testified at trial. The jury returned guilty verdicts as to both defendants. The district court sentenced each defendant to 20 years, the statutory minimum sentence. Both filed timely notices of appeal.

## II.    Analysis

### A.  Sufficiency of the Evidence

Both Defendants challenge the sufficiency of the evidence. The test is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard applies to both direct and circumstantial evidence. *United States v. Kone*, 307 F.3d 430, 434 (6th Cir. 2002). "Moreover, it is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt." *Id*. (internal quotation marks, alteration and citation omitted).

To establish a violation of 21 U.S.C. § 846, the government must establish beyond a reasonable doubt: "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Allen*, 619 F.3d 518, 522 (6th Cir. 2010) (internal quotation marks and citation omitted).

Estrada argues that the evidence established merely that he was present at the warehouse after delivering what could have been legitimate cargo and there was no proof to show that he knew the cargo was marijuana. There is sufficient evidence to support Estrada's conviction. McBride testified that Estrada had driven a tractor trailer on one occasion. Taylor also identified Estrada as a driver of one of the loads of marijuana hidden behind the false wall, and on cross-

4

examination clarified that he had seen him at the warehouse on more than one occasion. Agents observed Estrada arrive at the warehouse on May 12, 2011, in a tractor trailer, and they heard sounds of a forklift and a drill coming from the warehouse while Estrada was inside. Trooper Montgomery stopped Estrada in the tractor trailer and discovered the hidden compartment with the currency inside. The jury could have easily disbelieved Estrada's story that he turned his truck over to an unknown individual for several hours, especially since his claim that he had to break into the truck to retrieve the keys did not square with Montgomery's observations.

In short, this is sufficient evidence to establish that Estrada's participation was not innocent, that he knew about the drugs and the money he was transporting willfully in the conspiracy.

Gallegos challenges the sufficiency of evidence because McBride failed to identify him, no drugs were found in the trailer, and his fingerprints were not on the money or the doors to the secret compartment. Nonetheless, there was sufficient evidence to support Gallegos's conviction. McBride thought Gallegos was one of the drivers who came to the warehouse, and he positively identified the tattoos on Gallegos's arm. Taylor identified Gallegos as the driver with the marijuana hidden inside a stack of doors. Taylor thought Gallegos looked like the driver who asked him how much money was being placed inside the hidden compartment. Gallegos's bill of lading was suspicious. The contents of the trailer were also suspicious: there were Lowe's boxes instead of the shipper's own boxes, many of the boxes were empty, the weight of the load was unusually light, and there was $998,000 hidden in a false compartment in a stack of doors. And Gallegos himself told cellmate Daniels that he was involved in a drug conspiracy and that he transported almost a million dollars in his tractor trailer.

Gallegos's conviction is also supported by the evidence.

5

## B. Ineffective Assistance of Counsel

Estrada asserts that his counsel was ineffective for failing to request a severance. He alleges prejudice from being tried with a codefendant who had a prior felony conviction for a similar offense and who confessed to a jail-house informant. A joint trial of defendants indicted together is the preferred method, *see United States v. Davis*, 170 F.3d 617, 621 (6th Cir. 1999), and the jury is presumed capable of treating each defendant separately, *see United States v. Cobleigh*, 75 F.3d 242, 247 (6th Cir. 1996). A severance should be granted only if there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants." *Id.* at 248. Notwithstanding, we review ineffective assistance claims on direct appeal only in the rare case where the error is apparent from the record. *See United States v. Lopez-Medina,* 461 F.3d 724, 737 (6th Cir. 2006). The record is not sufficiently developed for us to determine why defense counsel chose not to file a motion to sever. This claim is not yet ripe for review.

## C. Motions to Suppress

Estrada claims that the district court erred in denying his motion to suppress, reasoning as follows: "If the information previously obtained at the warehouse appeared sufficient to order the stop and arrest of Appellant, sufficient time existed to obtain an [sic] warrant for that vehicle as it travelled back to Texas," because Estrada "travelled on the open road and stopped." In other words, Estrada is arguing that there were no exigent circumstances and there was time to obtain a warrant. This is not what Estrada argued in the district court. His motion to suppress sought simply "to suppress all evidence seized as a result of a search of the defendant and a home, a vehicle, and all statements either written or oral made after the arrest of the defendant," R. 474, ID 935, and did not contain any legal argument or discussion of the facts. Estrada's perfunctory claim, "unaccompanied by some effort at developed argumentation," was properly

6

deemed forfeited by the district court. *See El–Moussa v. Holder,* 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a skeletal way, leaving the court to put flesh on its bones.") (internal quotation marks and alteration omitted)). *Cf. United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (evidentiary hearing is required only if contested issues of fact are in issue). Having failed to properly present the argument in the district court, Estrada has "forfeit[ed] the right to have the argument addressed on appeal." *Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793, 799 (6th Cir. 2012) (internal quotation marks and citation omitted) (alteration added).

On appeal Gallegos challenges his arrest and search of his vehicle. He failed to file a motion to suppress in the district court, however, so he has waived any challenge to the admission of the evidence. *See* Fed. R. Crim. P. 12(b)(3); (e); *Lopez-Medina*, 461 F.3d at 738.

### D. Prosecutorial Misconduct

Gallegos contends that the government's closing argument constituted prosecutorial misconduct and plain error. A criminal defendant need not testify or produce any evidence, and the prosecutor may not comment on this absence. *United States v. Gonzalez*, 512 F.3d 285, 292 (6th Cir. 2008). Here, the prosecutor commented during rebuttal that "the proof is overwhelming and uncontroverted." Pg ID #3781. This is not prosecutorial misconduct, because all the prosecutor did was "summarize the evidence and comment upon both its quantitative and qualitative significance," which is perfectly permissible. *See United States v. Drake*, 885 F.2d 323, 324 (6th Cir. 1989). Because the comment was not improper, there was no prosecutorial misconduct, *see United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002) (to constitute reversible prosecutorial misconduct during closing argument, the remark first must be improper

7

and also flagrant), and therefore no error, plain or otherwise, *see United States v. Olano*, 507 U.S. 725, 732 (1993) (plain error standard requires error that is plain).

### E. Prior Felony Drug Convictions

Both Defendants challenge the district court's decision to enhance their sentences based on their prior drug felony convictions. Gallegos claims that the district court's finding that he had a prior drug conviction violated his right to a jury trial. Since he did not raise this issue in the district court, plain error review applies.

Gallegos's argument is without merit. In *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the Supreme Court held that the fact of a prior conviction may be treated as a sentencing factor, rather than an element of the offense that must be proven beyond a reasonable doubt. *Almendarez-Torres*, 523 U.S. at 230 (explicitly holding that "prior commission of a serious crime ... is as typical a sentencing factor as one might imagine"). The Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), does not alter this rule. *See Alleyne*, 133 S. Ct. at 2160 n.1. *See also United States v. Wynu*, 531 F. App'x 596, 597 (6th Cir.) (per curiam), *cert. denied*, 134 S. Ct. 347 (2013) (No. 13-5877). The district court did not err in considering Gallegos's prior conviction in determining his sentence.

Estrada raises a new claim on appeal too, alleging that, although his prior conviction was a state felony in 1990 when he was convicted of aggravated possession of marijuana, it is now considered a misdemeanor under the Controlled Substances Act (CSA), 21 U.S.C. § 801, *et. seq.*, and therefore should not have been used to increase his statutory minimum from 10 to 20 years. *See* 21 U.S.C. § 841(b)(1)(A) (doubling statutory minimum from 10 to 20 years for defendants previously convicted of a "felony drug offense").[1] Again, we review for plain error only.

---

[1] In the district court Estrada objected that the prior conviction was more than 10 years old and "remote in time."

Estrada's only support for this proposition is *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013). *Moncrieffe* dealt with the definition of "aggravated felony" under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43), holding that "[s]haring a small amount of marijuana for no remuneration" qualifies as only a misdemeanor under the CSA, and therefore does not amount to an "aggravated felony" under the INA. *Moncrieffe*, 133 S. Ct. at 1693. It is inapposite. In any event, Estrada's prior conviction (for knowingly and intentionally possessing more than 50 pounds but less than 200 pounds of marijuana, punishable by 8 years custody (suspended)) still qualifies as a felony under the CSA. *See* 21 U.S.C. 802(44) ("The term 'felony drug offense' means an offense that is punishable by imprisonment for more than one year . . . of a State").

In short, Estrada's contention is without merit.

### F. Eighth Amendment

Gallegos contends that his automatic twenty-year statutory minimum sentence violates the Eighth Amendment because it is disproportionate to his crime. As we recently explained:

> Constitutional challenges to a sentence present questions of law that are reviewed de novo. *United States v. Jones*, 569 F.3d 569, 573 (6th Cir.2009). The Eighth Amendment forbids "extreme sentences that are grossly disproportionate to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (internal quotation marks omitted) (Kennedy, J. concurring in part and concurring in the judgment); *see also United States v. Layne*, 324 F.3d 464, 473 (6th Cir.2003). "The Supreme Court has adopted a 'narrow proportionality principle' in evaluating Eight Amendment claims." *United States v. Hughes*, 632 F.3d 956, 959 (6th Cir.2011) (quoting *Harmelin*, 501 U.S. at 997). The Eighth Amendment does not require strict proportionality between crime and sentence; "only an extreme disparity between crime and sentence offends the Eighth Amendment." *United States v. Moore*, 643 F.3d 451, 454 (6th Cir.2011) (internal quotation marks omitted). "A defendant challenging [a] sentence under the Eighth Amendment has a tremendously difficult burden to meet." *Hughes*, 632 F.3d at 959. Generally, a sentence within statutory limitations does not violate the Eighth Amendment. *Layne*, 324 F.3d at 474; *United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir.1994).

*United States v. Jamerson*, -- F. App'x --, No. 12-3803, 2013 WL 5015502, at *4 (6th Cir.

9

Sept. 16, 2013).

Gallegos cannot meet this burden.  The evidence established that Gallegos transported $998,000 in drug proceeds for a large drug trafficking operation.  The statutory maximum for the offense of conviction is life.  Gallegos received a sentence of 20 years, the absolute minimum sentence under the statute.  There is no extreme disparity between the crime of conviction and the sentence imposed.  *Cf. Harmelin*, 501 U.S. at 1009 (upholding mandatory life without parole based on the defendant's first felony conviction of possessing more than 650 grams of cocaine); *United States v. Hill*, 30 F.3d 48, 50-51 (6th Cir. 1994) (upholding a mandatory life term without parole for a third-time federal conspiracy to distribute cocaine where the defendant was responsible for 177.8 grams of cocaine base).  Besides, in *United States v. Dunson*, we held that *Harmelin* "eliminate[d] any possible basis for supposing that [a 20-year sentence imposed under 21 U.S.C. § 841(b)(1)(A)(ii)] violates the Eighth Amendment's prohibition against cruel and unusual punishments."  *Dunson*,  940 F.2d 989, 995 (6th Cir. 1991), *overruled on other grounds by United States v. Ferguson*, 8 F.3d 385 (6th Cir. 1993).  *See also United States v. Graham*, 622 F.3d 445, 452-54 (6th Cir. 2010); *Hill*, 30 F.3d at 50-51.

### III.    Conclusion

Accordingly, we AFFIRM Defendants' convictions and sentences.