**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0614n.06

**Case No. 13-5873**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Aug 08, 2014<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| QWINDEL JEROME PAGE, | ) | DISTRICT OF TENNESSEE |
|  | ) |  |
| Defendant-Appellant. | ) |  |
|  | ) |  |
|  | ) | O P I N I O N |

BEFORE: COLE, COOK, and WHITE, Circuit Judges.

COLE, Circuit Judge.  Qwindel Page was arrested in November 2009 after a law-enforcement investigation linked him to a drug conspiracy operating in Michigan and Tennessee. He was charged with conspiracy to distribute oxycodone, possession with intent to distribute oxycodone, and conspiracy to commit money laundering.  After his indictment, Page filed a motion for a bill of particulars in order to obtain the identities of his alleged co-conspriators.  He also filed a motion to suppress the evidence obtained in connection with his arrest, which he claims was executed without probable cause.  The district court denied both motions.  Page appeals.  We affirm, first because Page was not entitled to a bill of particulars naming his co-conspirators and was not prejudiced by the denial, and second because the district court properly concluded that the officers had probable cause to arrest Page.

## I. OVERVIEW

### 1. Factual Background

In November 2009, law enforcement officers in Tennessee arranged to have a confidential informant purchase oxycodone from Qwindel Page. The officers had already identified Page as a potential member of a drug conspiracy involving individuals from Detroit, Michigan. Through a series of recorded phone calls placed on November 16 and 17, the confidential informant arranged to meet Page in a Walmart store parking lot in Kingsport, Tennessee. Page later changed the location to a nearby Waffle House parking lot.

Sometime before this sale was arranged, one of the officers involved in the investigation obtained a certified copy of Page's driving record and determined that, at that time, Page did not have a Tennessee driver's license and his Michigan license had been suspended. An officer who testified at Page's suppression hearing explained that he believed the certified record had been ordered on October 3, 2009. The record in this case does not indicate whether any officers made additional inquiries into Page's driving record.

On November 17, the date of the sting operation, officers waited for Page at the Waffle House parking lot and near a residence located about a half-mile away, where Page was believed to stay periodically. The officers posted at the Waffle House observed Page pull into the parking lot from a public roadway. As one of them explained, Page drove a white Mitsubishi, was the car's only occupant, and was easily identifiable. This particular officer knew Page and had arrested him in 2005 for driving with a suspended license, among other offenses.

Almost immediately after entering the restaurant parking lot, Page left. The officers followed him out of the parking lot, onto a public highway, and then into a nearby subdivision where the house at which Page resided was located. The officers trailing him momentarily lost

sight of his car as they turned a corner, but then quickly spotted the car parked in front of the house. Page appeared to have just exited the vehicle. Another officer posted near the house also arrived to observe Page walking away from the car toward the house's front porch.

The officers trailing Page instructed him to stop and identified themselves as law enforcement. Page did not comply and tried first to enter the house, and then to jump off the porch. At this point, one officer saw Page make a throwing motion with his right hand toward the right side of the porch. Page was apprehended and placed under arrest. Officers searched the area around the porch and recovered a baggie containing 98 eighty-milligram oxycontin pills. They also searched the house, with the consent of its occupant, and obtained more oxycodone pills as well as other drug paraphernalia.

## 2. Procedural History

A grand jury initially charged Page with conspiracy to distribute oxycodone, in violation of 21 U.S.C. § 846, and possession of oxycodone with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1). A few months later, a superseding indictment was issued, adding a charge of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). As discovery progressed, Page filed several motions, including a motion for a bill of particulars and a motion to suppress evidence obtained upon his arrest. After a hearing on the motions, a magistrate judge denied the motion for a bill of particulars and recommended that the district court also deny the motion to suppress. The court accepted this recommendation. Page proceeded to trial and was found guilty of all three counts.

## II. ANALYSIS

### A.  Page's Motion for a Bill of Particulars

The purpose of a bill of particulars is to give a defendant key factual information not contained in the indictment, so as to enable him or her to prepare a defense and avoid surprise at trial. *See United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993); *see also* Fed. R. Civ. P. 7(f); 1 Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 130 (4th ed. 2008).  Page sought a bill in order to learn the identities of his alleged co-conspirators in the drug and money-laundering offenses and thereby determine whether multiple conspiracies might have existed in which he played no part.  The magistrate judge denied Page's motion, noting that a bill of particulars may not be used to obtain information about the government's evidence or its legal theories and concluding that "[t]he indictment . . . adequately advises the defendant of the charges against him."

We review the denial of a motion for a bill of particulars under the abuse of discretion standard. *Salisbury*, 983 F.2d at 1375.  "The decision to order a bill of particulars is within the sound discretion of the trial court," and we will affirm the trial court's denial unless we are "firmly convinced that a mistake has been made." *Id.*  Moreover, to successfully challenge the trial court's denial, the defendant "must show not only that the court abused its discretion," but also that he "actually suffered surprise or other prejudice at trial." *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (quoting *Salisbury*, 983 F.2d at 1375).

Page's challenge cannot succeed because he does not show that he was actually prejudiced by the court's denial of his motion.  As an initial point, the government is not obliged to provide the names of a defendant's alleged co-conspirators. *Crayton*, 357 F.3d at 568 (citing

*United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991)). Had Page's motion been granted, then, he still might not have obtained the information he wanted.

Additionally, Page's brief before this court, as well as the record, indicates that Page received ample discovery from which he could have discerned the possible identities of his co-conspirators. Page relies on *United States v. Bortnovsky*, 820 F.2d 572, 574–75 (2d Cir. 1987), to argue that the government cannot remedy an erroneous denial of a bill of particulars by offering up "mountains of documents" in discovery instead. While this may be true, Page does not claim that his discovery process was in fact unmanageable or that he was unable to prepare a defense. *See United States v. Tillotson*, 490 F. App'x 775, 777–78 (6th Cir. 2012) (defendant was not prejudiced by the denial of his motion for a bill of particulars where any surprise he encountered at trial resulted from his failure to review a reasonable amount of evidence from the government); *see also United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005) (noting that full access to discovery "further weakens the case for a bill of particulars"). Thus, the district court did not abuse its discretion in denying Page's motion.

**B. Page's Motion to Suppress Evidence Obtained After His Arrest**

Page also challenges the district court's denial of his motion to suppress evidence obtained after his arrest for driving with a suspended license in violation of Tennessee law. Page argues, as he did in the district court, that the officers lacked probable cause for the arrest. The court rejected this claim, finding that the stop was pretextual but permissible because the officers had probable cause to believe that Page lacked a valid license.

When reviewing a district court's ruling on a motion to suppress, we assess the court's legal analysis de novo and its factual findings for clear error. *United States v. Keith*, 559 F.3d

499, 503 (6th Cir. 2009). Additionally, we "must consider [the] evidence in the light most likely to support the district court's decision." *Id.*

Page's first argument is that the district court erred in finding that one of the officers, Sergeant Murray, "quickly and easily identified defendant as the driver of the vehicle," thus giving the officers probable cause to arrest Page for driving with a suspended license. (R&R, R. 66, PageID 210.) As support for this claim, Page relies on Murray's testimony from his suppression hearing, where Murray at one point stated, "[T]here was some question as to his"— Page's—"identity." But Page's argument utterly disregards the context in which Murray made this statement. A quick review of the transcript reveals that Murray was discussing an incident from 2005, when he stopped Page for a separate traffic violation, and not the arrest in November 2009. The court did not err in concluding that Murray accurately identified Page on the date of the arrest at issue.

Next, Page claims that the officers lacked probable cause because they did not—at least, to Page's knowledge—verify whether he had a valid driver's license in a state other than Tennessee or Michigan. The district court did not expressly address this argument but evidently gave it no credit. We too reject it because Page cites no authority indicating that that the officers lacked probable cause *unless* they investigated his driving record in states other than the two where he was known to live.

Last, Page appears to suggest that the officers' information regarding his suspended driver's license had become stale by the date of his arrest, although his brief only vaguely alludes to this point. Page makes this argument for the first time on appeal. He never pursued it in district court, even though he learned at his suppression hearing that officers may have checked his driving history only once, in early October, several weeks before his arrest. While this

argument could have merit if properly presented, Page has forfeited it by failing to raise it in the district court, and again by failing to present it adequately to this court. *See United States v. Holland*, 522 F. App'x 265, 272 (6th Cir. 2013); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997); *see also United States v. Gallegos*, 553 F. App'x 527, 531 (6th Cir. 2014). The district court did not err in denying Page's motion to dismiss.

### III. CONCLUSION

We affirm the district court's orders denying Page's motions.