NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0320n.06

No. 10-3630

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 13, 2011**
LEONARD GREEN, Clerk

GERALD J. LINDSLY,                                  )
                                                    )        ON APPEAL FROM THE
         *Plaintiff-Appellee*,                      )        UNITED STATES DISTRICT
                                                    )        COURT FOR THE SOUTHERN
v.                                                  )        DISTRICT OF OHIO
                                                    )
MICHAEL WORLEY; WILLY DALID,                        )        **O P I N I O N**
                                                    )
         *Defendants-Appellants*.                   )

BEFORE:     COLE, and GIBBONS, Circuit Judges; and CLELAND, District Judge.[*]

**COLE, Circuit Judge.** Defendants-Appellants Michael Worley and Willy Dalid appeal the

district court's denial of their motion for summary judgment based on qualified immunity. On

appeal, defendants contend that no reasonable jury could believe that either defendant caused

Lindsly's injuries and that the district court erroneously admitted an internal affairs report of the

incident. Because we lack jurisdiction to review either issue, we **DISMISS** the appeal.

**I.**

Plaintiff-Appellee Gerald Lindsly was arrested for breaking the window of a private residence

the night of August 3, 2006. Lindsly suffers from mental illness and was experiencing a psychotic

episode at the time of the incident. Lindsly's arresting officers, who are not parties to this case, took

_____

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of
Michigan, sitting by designation.

him to the Hamilton County Justice Center ("HCJC"), where he was held overnight. The next morning, HCJC corrections officers took Lindsly to the HCJC identification section, Lincoln 14, to be photographed and fingerprinted. The officer in charge of security for Lincoln 14, Deputy Melissa Kilday, testified that because Lindsly was acting loud and aggressive, he was taken from Lincoln 14 to cell AH5, which holds inmates that need to be separated from others. Officers Worley, Dalid, and Michael Lally escorted Lindsly from Lincoln 14 to cell AH5.

Once outside of cell AH5, Lindsly and the three officers came within the view of a HCJC security camera. Lindsly spit on the hallway floor. Dalid asked an inmate porter, Theodore Gentry, for a towel, handed the towel to Lindsly, and instructed him to clean up the spit. The parties dispute what happened next. Lindsly alleged that he tossed the towel in the direction of Gentry. Worley claimed that Lindsly threw the towel at him, but Gentry testified that Lindsly threw the towel at the ceiling.

Lindsly alleged that defendants next "instantly converged" on him, and "applied physical force . . . including chokes, kicks, blows and knee strikes, and forced him to the floor." (Complaint, Case No. 1:09-cv-00375, Dist. Ct. Docket No. 1, at 3.) Additionally, Lindsly alleged that Worley or Dalid, or both, administered a knee strike directly to his face. (*Id.*) Gentry testified that all three officers attacked Lindsly and were "beating him up . . . pretty bad." (Gentry Dep., Case No. 1:07-cv-00588, Dist. Ct. Docket No. 28 Ex. 4, at 16, 28-29.) Both Worley and Dalid denied that they forced Lindsly to the ground or intentionally struck him. The security camera footage does not fully capture the incident because for a period of time Lindsly is not visible on camera—partly because Lindsly is no longer within the camera's view and partly because, even once he returns within the camera's

scope, the officers' bodies obstruct the camera's view.

Immediately after the incident, Gentry observed visible injuries to Lindsly's face, including bleeding and swelling. Lindsly was taken to the hospital by HCJC staff a few hours later. At the hospital, Dr. Kevin Joseph performed a CAT scan on Lindsly and determined that Lindsly had four fractures in his right eye, a nasal fracture, and a mild corneal abrasion. Several days after the incident the Hamilton County Sheriff's Office of Internal Affairs conducted an investigation of the incident and concluded that Worley and Dalid used excessive force against Lindsly and that Lindsly's injuries were the result of that force.

Subsequently, Lindsly brought this action in the district court under 42 U.S.C. § 1983, claiming defendants used excessive force against him. Defendants moved for summary judgment on two bases: (1) that they were entitled qualified immunity; and (2) that neither Worley nor Dalid caused Lindsly's injuries. The district court denied defendants' motion. The district court held that, when viewed in the light most favorable to Lindsly, the record demonstrated that defendants used excessive force against Lindsly and that this was a violation of Lindsly's clearly-established constitutional rights. Additionally, based on Gentry's testimony, the district court found that there was a disputed question of fact regarding the extent to which either defendant was responsible for Lindsly's injuries.

## II.

### A.    Qualified Immunity

We have jurisdiction to hear appeals from "final decisions of the district courts." 28 U.S.C. § 1291. Under the collateral order doctrine, denials of qualified immunity constitute final orders.

*Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). "'A defendant who is denied qualified immunity may file an interlocutory appeal with this Court only if that appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law.'" *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006) (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998) (citations omitted)). But a claim "that the district court erred in finding a genuine issue of fact for trial is *not* the type of legal question which we may entertain on an interlocutory basis." *Id.* at 743. "This jurisdictional limitation requires that, if 'the defendant disputes the plaintiff's version of the story, the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal.'" *Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009) (quoting *Berryman*, 150 F.3d at 563). However, there is a limited exception to this jurisdictional limitation. After *Scott v. Harris*, 550 U.S. 372 (2007),"where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on interlocutory appeal." *Moldowan*, 578 F.3d at 370 (internal quotation marks omitted). We review a district court's denial of summary judgment on qualified immunity grounds de novo. *Gregory*, 444 F.3d at 742.

Defendants' primary argument on appeal is that neither Worley nor Dalid caused Lindsly's injuries. Defendants attempt to characterize this argument as a legal one by claiming that the district court misapplied dicta in *Harper v. Albert*, 400 F.3d 1052 (7th Cir. 2005), and failed to engage in the individualized assessment of each defendant's actions as required, *see Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008). However, the essence of this claim is simply a reformulation of the same factual argument repeated throughout defendants' briefs: that when defendants' actions are

considered individually, the record demonstrates that neither Worley nor Dalid caused Lindsly's injuries. The district court addressed this argument, stating that "there [are] significant factual questions concerning the source of Plaintiff's injuries." (Order, Case No. 1:09-cv-00375, Dist. Ct. Docket No. 17, at 16.) Generally, we lack jurisdiction to revisit this determination on interlocutory appeal. *See Gregory*, 444 F.3d at 743. Relying on the narrow exception to this limitation, defendants argue that the district court's determination that a genuine dispute existed regarding the cause of Lindsly's injuries is "blatantly and demonstrably false," *see Moldowan*, 578 F.3d at 370 (internal quotation marks omitted), and that no reasonable jury could find that either Worley or Dalid caused Lindsly's injuries.

Defendants contend that a single knee strike to Lindsly's face was the sole cause of his injuries and thus attempt to restrict our inquiry to which officer performed the knee strike. To support this approach, defendants point to Gentry's statement that he observed only one knee strike, and that it was performed by Officer Lally. However, Lindsly's complaint alleged that *both* defendants "applied physical force [to him] including chokes, kicks, blows, and knee strikes, and forced him to the floor," (*see* Complaint, Case No. 1:09-cv-00375, Dist. Ct. Docket No. 1, at 3), which other portions of Gentry's testimony support. Gentry viewed the security camera video from that morning and identified Worley and Dalid as "the attackers." (Gentry Dep., Case No. 1:07-cv-00588, Dist. Ct. Docket No. 28 Ex. 4, at 26-27.) He stated that both Worley and Dalid "were beating [Lindsly] up," "attacked him," and "drug [sic] him in [to the cell] by his hair." (*Id.* at 16, 30.) Also, Lindsly alleged that defendants' collective actions caused his injuries, without specifically identifying which actions, and Lindsly's doctor testified that it was impossible for him to determine

whether Lindsly's injuries were the result of one or multiple "blows," (Joseph Dep., Case No. 1:07-cv-00588, Dist. Ct. Docket No. 28 Ex. 7, at 22). Even crediting defendants' claim that it was Officer Lally who performed the knee strike, there is no basis to presume, as defendants do throughout their briefs, that the knee strike *alone* caused Lindsly's injuries in light of Gentry's testimony. Therefore, the record does not establish that the district court's conclusion that there is a genuine dispute over the cause of Lindsly's injuries "is blatantly and demonstrably false." *Moldowan*, 578 F.3d at 370 (internal quotation marks omitted). For that reason, the instant circumstances do not fall within the narrow exception created by *Scott v. Harris*, and we lack jurisdiction to review defendants' first argument on appeal.

We note, as an aside, that any argument by defendants that Lindsly's injuries are de minimis—and therefore do not rise to the level of a constitutional violation—misconstrues our precedent. In so arguing, defendants rely on *Leary v. Livingston County*, 528 F.3d 438 (6th Cir. 2008). But as clarified at oral argument, while the degree of injury is not irrelevant, the dispositive issue is "whether the actual or threatened *force* was *de minimis*." *Id.* at 444. Defendants advance no argument that the force alleged was de minimis.

### B. Admissibility of the Internal Affairs Report

Lastly, defendants contend that the district court erred in admitting the internal affairs report under Federal Rule of Evidence 803(8) because it lacked trustworthiness. This issue does not fall within the collateral order doctrine and therefore is reviewable on interlocutory appeal only if it is "inextricably intertwined with an independently appealable issue." *Turi v. Main Street Adoption Servs.*, 633 F.3d 496, 502 (6th Cir. 2011). "[T]he inextricably intertwined requirement is satisfied

only if the resolution of the properly appealable issue necessarily and unavoidably decides the non-appealable issue." *Id.* (internal quotation marks omitted). Defendants do not contend that this issue is inextricably intertwined with the denial of qualified immunity. Finding no reason that this is so, we decline to exercise pendent jurisdiction over this issue.

## III.

For the reasons stated above, we **DISMISS** the appeal.