NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0082n.06

No. 15-1567

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

JOSEPH ROWLERY, JR.,

    Plaintiff-Appellee,

v.

GENESEE COUNTY; DAVID SCHMIEDER;
SZEMITES; NUKOLLS; DOBBS,

    Defendants,

and

ROBERT WINSTON; E. MARTIN; S.
PRITCHARD; MANGRIM,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Feb 08, 2016
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE:    COLE, Chief Judge; SUHRHEINRICH and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  On December 3, 2010, Joseph Rowlery, Jr. was being detained at the Genesee County Jail in Flint, Michigan.  While Rowlery was in jail, Genesee County Deputy Sheriff Robert Winston, with the assistance of Genesee County Deputy Sheriffs E. Martin, S. Pritchard, and S. Mangrum, allegedly forced Rowlery face-down to the concrete floor, handcuffed him, and beat him until his head split open on the concrete.  Rowlery filed a 42 U.S.C. § 1983 action in federal district court, alleging that the deputies had violated his rights under the Fourteenth Amendment by using excessive force against him.  The deputies moved for

summary judgment on the basis of qualified immunity, contending that a video of the incident that occurred at the jail on December 3, 2010 established that they had not violated Rowlery's clearly established constitutional rights. The district court denied the deputies' motion, concluding that genuine issues of material fact precluded summary judgment on the basis of qualified immunity, and the deputies appealed. The video of the incident that occurred in the jail does not utterly discredit the district court's determination that genuine issues of material fact precluded summary judgment on the basis of qualified immunity. This court therefore lacks jurisdiction to hear this appeal.

The parties agree that on December 3, 2010, Rowlery was being held in the Genesee County Jail on a warrant for not paying child support, R. 63-3 at PageID #655; R. 74-3 at PageID #935, but disagree about the sequence of events that occurred after Rowlery was detained.

Rowlery testified to the following: Genesee County Lieutenant David Schmieder told Rowlery that he would be released from jail at 6:00 or 6:15 pm. R. 63-3 at PageID #657. While Rowlery was in the cell hallway picking up his jacket in preparation for being released, a female detainee in a nearby cell asked him if he was leaving. *Id.* As he turned around to answer the female detainee, Winston appeared in the cell hallway and asked Rowlery what he was doing. *Id.*

Rowlery responded, "I'm being released," and Winston replied, "No, you're not. Give me your coat, you're going back into your cell." *Id.* Rowlery stated, "But I'm being released," to which Winston replied, "No, you're not. Give me your coat, you're going back in your cell." *Id.*

As Rowlery was taking off his jacket, Winston said that Rowlery was "refusing to comply" and ordered him to get down on the floor. *Id.* at PageID #657−658, #680. However,

before Rowlery could comply with Winston's order, Winston grabbed Rowlery, threw him against the wall and forced him to ground. *Id*. at PageID #658, #680; Appellee's Brief at 14 (alleging that the video depicts these events). As Winston was throwing Rowlery to the ground, Mangrum, Pritchard, and Martin "joined in," even though Rowlery was not resisting. Appellee's Brief at 14; R. 63-3 at PageID #658. At some point during this struggle, Rowlery was handcuffed. *Id*.

While Rowlery was lying prostrate on the ground with his hands handcuffed behind his back, Winston balanced on Rowlery's back. *Id*. at PageID #658−660. Winston simultaneously jammed his knees into Rowlery's back and rammed his fists into the back of Rowlery's head, causing it to repeatedly strike the concrete floor. *Id*. at PageID #660. As a result of this beating, Rowlery's head "split open" on the concrete and the rear right molar was knocked from his mouth. *Id*. at PageID #659. Rowlery further alleges that this beating caused him to injure his knees and sustain a laceration in his right eyebrow. *Id*. at PageID #660−661. According to Rowlery, Winston beat Rowlery even though he had fully complied with all of Winston's orders, "never shouted any obscenities" at the deputies, and did not resist the deputies by pushing back or tightening up on them. *Id*. at PageID #658, #680.

After this alleged beating occurred, a nurse examined Rowlery at the jail, and it was determined that he should go to the hospital. *Id*. at PageID #665. Rowlery was then taken to the Hurley Medical Center, where his injuries were treated. *Id*. at PageID #664.

The deputies' account of the events that occurred on December 3, 2010, differs from Rowlery's version in several fundamental respects. According to Winston, Rowlery was not scheduled to be released until 9:00 p.m. on the night of December 3, 2010. R. 63-5 at PageID #695. Prior to his release, Rowlery had been told to sit on a bench to wait to be fingerprinted.

*Id*. at PageID #696.  However, instead of waiting on the bench, Rowlery got up, walked down the cell hallway, and harassed a female detainee in a cell "by talking to her." *Id*.  Winston testified that Rowlery had harassed the female detainee by talking to her because male detainees were not allowed to have "any contact" with any female detainees. *Id*.

After Winston saw Rowlery talking to the female detainee, Winston asked Rowlery to "remove his jacket and shoes, and enter his cell." *Id*. at PageID #696−697.  Even though Winston gave these orders to Rowlery "[m]ultiple times," Rowlery refused to comply with any of these orders and "start[ed] to throw profanity" at Winston in an elevated voice. *Id*. at PageID #697.  Rowlery ultimately took off his shoes and jacket, but refused to enter the cell. *Id*.

Winston then placed his hand on Rowlery's arm in order to guide him into the nearby cell. *Id*.  Because Winston felt Rowlery "tense[] up" and "push[] back" at him as he tried to guide Rowlery into his cell, Winston pushed Rowlery toward the wall. *Id*.  While Rowlery was pinned against the wall, he grabbed Winston's left arm. *Id*. at PageID #697−698.  Winston then delivered a knee strike to Rowlery's left common peroneal, which is a nerve in the back of the leg, in order to get Rowlery to the floor. *Id*. at PageID #698; R. 78 at PageID #975.  This is a strike that deputies are trained to use to bring a non-compliant person to the floor so that he can be restrained. R. 63-7 at PageID #740.

Rowlery fell face-down to the ground, where a struggle ensued. R. 63-7 at PageID #740; R. 63-6 at PageID #721.  Winston, Martin, Pritchard, and Mangrum all testified that they came into physical contact with Rowlery while he was being restrained on the floor. R. 63-5 at PageID #699; R. 63-6 at PageID #720, #724; R. 63-7 at PageID #741−742; R. 63-8 at PageID #752−753.  However, Winston testified that he never hit or kicked Rowlery during this struggle or at any time. R. 63-5 at PageID #699.  The deputies also contend that Rowlery was resisting

while on the floor by tightening up to make restraining him more difficult, pulling away from the deputies, kicking his legs up in the air toward the deputies, and refusing to surrender his hands. R. 63-5 at PageID #700; R. 63-6 at PageID #724; R. 63-7 at PageID #741, #743; R. 63-8 at PageID #752.

A video[1] depicting the incident that occurred at the jail on December 3, 2010 shows the following sequence of events:

The video shows Rowlery, wearing a jacket, sitting on a bench in the jail. *Video* at 18:31:14−18:34:30. Rowlery stood up and walked into the cell hallway. *Id.* at 18:34:30−18:34:50. Rowlery then stood speaking in front of a cell door in the hallway. *Id.* at 18:34:50−18:37:15. Winston and another deputy entered the hallway and approached Rowlery.[2] *Id.* at 18:37:15. Rowlery stepped away from the cell door, and Rowlery and Winston began to converse. *Id.* at 18:37:15−18:37:20.

The video does not contain audio. However, the video shows that while Rowlery and Winston were conversing, Winston gestured toward a nearby cell with an open door. *Id.* at 18:37:18−18:37:33. After Winston had gestured toward the cell several times, Rowlery took off his jacket and put it on the floor, but did not enter the cell. *Id.* at 18:37:36−18:37:45. Winston again gestured toward the cell with his arm, but Rowlery did not go into the cell. *Id.* at 18:37:45−18:37:50. At this time, there were five deputies in the cell hallway. *Id.* at 18:37:52.

Winston then placed his hand on Rowlery's arm and pushed him against the wall. *Id.* at 18:37:52−18:37:56. The video does not show Rowlery tense up or push back against Winston

---

[1]Rowlery obtained this video from the Genesee County Jail and submitted it to the district court. R. 65-2 at PageID #855; R. 66 at PageID #856−857; R. 63-3 at PageID #658.
[2]Although the parties did not provide the district court with guidance about the identity of the deputies in the video, the district court determined that Winston was the officer who approached Rowlery. R. 78 at PageID #974−976. The deputies do not contest this determination. Appellants' Brief at 7 n.4.

after Winston grabbed Rowlery's arm. *Id.* at 18:37:52−18:37:53. However, the video shows some movement of Rowlery's arms and body during the time that he is pinned against the wall. *Id.* at 18:37:53−18:37:57.

As Winston pushed Rowlery against the wall, the other deputies who had gathered around Rowlery and Winston stepped in to assist Winston. *Id.* at 18:37:54−18:37:57. Rowlery was forced face-down to the floor, where a struggle ensued. *Id.* at 18:37:57−18:38:27. During this struggle, the deputies surrounded Rowlery, holding him down by his shoulders and feet. *Id.* Because the deputies partially blocked the view of Rowlery's body during this struggle, the video does not show whether Rowlery resisted the deputies' attempts to take him down to the floor and to handcuff him. *Id.* The video also does not show whether Winston punched Rowlery after he was handcuffed. *Id.*

While Rowlery was being restrained on the floor, another deputy walked down the cell hallway toward the struggle. *Id.* at 18:38:02. A group of deputies then lifted Rowlery up so that he was sitting in the middle of the cell hallway. *Id.* at 18:38:27−18:38:29. The video then shows Rowlery sitting handcuffed with his hands behind his back, his pants around his ankles and blood on the left side of his face. *Id.* at 18:38:32.

Rowlery filed suit in federal district court against the deputies, alleging that they had violated Rowlery's civil rights under 42 U.S.C § 1983 by using excessive force against him in violation of the Eighth and Fourteenth Amendments, as well as alleging state-law claims for assault, battery, and gross negligence. R. 1 at PageID #1−9.[3]

---

[3]Rowlery also alleged claims against Genesee County, Schmieder, Genesee County Sergeant Robert Nuckolls, and Genesee County Deputy Sheriffs Brandon Szemites and Ryan Dobbs. R. 1; R. 69 at PageID #867–868. Rowlery further alleged that the defendants violated his rights under the Fourteenth Amendment by using excessive force against him when he was

The deputies moved for partial summary judgment. R. 58. After learning that Rowlery had video footage depicting the incident that occurred in the jail on December 3, 2010, the deputies filed a supplemental motion, contending that the video established that Rowlery's Fourteenth Amendment excessive force claim failed as a matter of law because the deputies were protected by the doctrine of qualified immunity. R. 67 at PageID #861−862. The district court denied the deputies' motion as it related to Rowlery's Fourteenth Amendment excessive force claim, R. 69 at PageID #895−896, but did not explicitly address the deputies' qualified immunity defense because the deputies did not raise this defense in their motion for partial summary judgment. *Id*. at PageID #869 n.2. The deputies then filed a motion for summary judgment on Rowlery's Fourteenth Amendment excessive force claim on the basis of qualified immunity. R. 73; R 74.

The district court denied the deputies' motion. Because Rowlery was a pretrial detainee on December 3, 2010, the district court analyzed his excessive force claim under the Fourteenth Amendment's Due Process Clause. R. 78 at PageID #978. At the time that the district court denied the deputies' motion, "the standard for excessive force" under the Fourteenth Amendment was "whether the actions of law enforcement officers 'shock the conscience of the court.'" *Id*. at PageID #979 (quoting *Francis v. Pike Cnty.*, 875 F.2d 863 at *2 (6th Cir. 1989) (quoting *Lewis v. Downs*, 774 F.2d 711, 713 (6th Cir. 1985))).[4] The district court reasoned that because the events on December 3, 2010 did not occur in a "rapidly evolving, fluid, and dangerous" situation, the deputies' actions would be "deemed conscience-shocking if they were taken with

---

incarcerated at the Genesee County Jail on September 17, 2011. R. 1 at PageID #3–5. These claims are not at issue in this appeal.

[4]After the district court entered its judgment, the Supreme Court held that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

'deliberate indifference' towards [Rowlery's] federally protected rights." R. 78 at PageID #979−980 (quoting *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000)).

The district court rejected the deputies' contention that their use of force was justified because Rowlery had resisted the deputies when they attempted to guide him into his cell by "throwing out his arm and kicking his leg backwards." R. 78 at PageID #982. The district court explained that although the video showed "some movement of [Rowlery's] arm and leg . . . a reasonable juror could conclude from the video and [Rowlery's] testimony that he was not engaged in non-compliant behavior that justified the application of force." *Id*. at PageID #983. The district court also concluded that the video showed that "Mangrum, Pritchard, and Martin assisted [Winston] in either the takedown of [Rowlery] or in holding him down by his feet and shoulders during the time when [Winston] is alleged to have punched [Rowlery] in the back of the head." *Id*.

The district court further determined that the video did not resolve the parties' factual dispute about whether Winston had "punched [Rowlery] in the back of the head while [he] was lying compliantly on the floor." *Id*. The district court reasoned that if such a beating had occurred, it would constitute excessive force because punching a detainee after he was already handcuffed violates the Fourteenth Amendment. *Id*. at PageID #983−984. Accordingly, the district court held that there was a genuine issue of material fact about whether Winston, Mangrum, Pritchard, and Martin had been "deliberately indifferent to Rowlery's constitutionally protected rights." *Id*. at PageID #984.

The district court also held that Rowlery's constitutional rights were clearly established. *Id*. at PageID #984−986. The district court reasoned that "a pretrial detainee's right to be free from the use of excessive force amounting to punishment was clearly established law" on

December 3, 2010.  *Id*. at PageID #985 (citing *Leary v. Livington Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008)).    The district court concluded that "[i]t is also well established that it is unconstitutional to punch a detainee once he has already been subdued."  R. 78 at PageID #986 (citing *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006); *Feemster v. Dehntjer*, 661 F.2d 87, 89 (8th Cir. 1981)).  Accordingly, the district court denied the deputies' motion for summary judgment on the basis of qualified immunity.  R. 78 at PageID #986.

This court lacks jurisdiction to hear and reverse the district court's holding that genuine issues of material fact precluded summary judgment on the basis of qualified immunity. A district court's denial of a claim of qualified immunity is a "final, appealable decision" under 28 U.S.C. § 1291 only to "the extent that [the denial] turns on an issue of law."  *Sheets v. Mullin*, 287 F.3d 581, 585 (6th Cir. 2002) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). "A defendant may not appeal a denial of qualified immunity 'insofar as that order determines whether or not the pretrial record sets forth a "genuine" issue of fact for trial.'"  *Clay v. Emmi*, 797 F.3d 364, 368 (6th Cir. 2015) (quoting *Johnson v. Jones*, 515 U.S. 304, 319−20 (1995)). The issue that the deputies raised on appeal is premised upon a factual dispute, not upon a question of law.  The issue raised on appeal—as presented by the deputies—is:

> Are the [d]eputies protected by qualified immunity since their minimal use of force was objectively reasonable after Rowlery refused to comply with verbal commands, stiffened when an officer placed a hand on his arm, and then became physically resistant while the [d]eputies were handcuffing him and, in any event, no clearly established law would have told the [d]eputies that employing this use of force was unconstitutional when faced with resistance by a pretrial detainee?

Appellants' Brief at 5.  This is a dispute about the facts as presented by Rowlery and accepted by the district court, not a question of law.  Rowlery alleged, and the district court agreed, that a reasonable juror could conclude that Rowlery complied with the deputies' efforts to guide him

into his cell and to handcuff him and that Winston, with the assistance of the other deputies, punched Rowlery after he was handcuffed. R. 78 at PageID #983−984. The deputies contest all of these facts. Appellants' Brief at 25−32, 38. Accordingly, the deputies' contention that they did not use excessive force against Rowlery is premised upon a factual dispute.

The deputies' contention that they did not violate Rowlery's clearly established constitutional rights is also premised upon a factual dispute. The district court concluded that the deputies violated Rowlery's clearly established rights in part because unconstitutionality of punching a detainee "once he has already been subdued" was clearly established on December 3, 2010. R. 78 at PageID #986. The deputies contend that this conclusion was erroneous. To support this argument, the deputies contend that "the video establishes that Rowlery was non-compliant and physically resistant until he was handcuffed" and that the deputies "discontinued their use of force once Rowlery was handcuffed." Appellants' Brief at 37−38. As stated above, the district court concluded that both of these facts were subject to reasonable debate. Accordingly, the deputies' contention that they did not violate Rowlery's clearly established constitutional rights is also premised upon a factual dispute.

The fact that there is a video of the incident does not take this case out of the rule that we lack interlocutory appellate jurisdiction to resolve whether there is a genuine issue of material fact. We recognize that "[t]here is a limited exception" to the rule that an appellate court may not review a district court's determination that disputes of fact preclude summary judgment on the basis of qualified immunity—"where the district court's determination that a dispute of fact exists is 'blatantly and demonstrably false.'" *Clay*, 797 F.3d at 368 (quoting *Romo v. Largen*, 723 F.3d 670, 674 n.3 (6th Cir. 2013)). "An appellate court may exercise jurisdiction to hear and reverse such holding where 'the plaintiff's version of the facts, which the district court accepted,

was so utterly discredited by the record . . . that no reasonable jury could have believed him.'" *Clay*, 797 F.3d at 638 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). However, the video does not utterly discredit the district court's conclusion that there were genuine issues of fact about whether (1) Rowlery had been compliant and (2) Winston, with the assistance of the other defendants, had punched Rowlery after he had been handcuffed.

First, the video does not compel a conclusion that Rowlery engaged in non-compliant behavior that justified the application of force. The video does not show that Rowlery stiffened or pushed back against Winston after he placed his hand on Rowlery's upper arm in order to escort him into the cell. *Video* at 18:37:52−18:37:53. The video thus does not compel a conclusion that Rowlery resisted Winston's efforts to guide him into a cell. R. 78 at PageID #982−983. Further, Rowlery is not completely visible on the video during the time that he is being restrained on the floor because the deputies who gathered around him partially blocked the view of his body. *Id.* at 18:37:57−18:38:27. The video therefore does not resolve the parties' dispute about whether Rowlery resisted the deputies' attempts to handcuff him by moving his body and legs and by refusing to surrender his hands to the deputies. The video does not blatantly demonstrate that Rowlery had "engaged in non-compliant behavior that justified the application of force." R. 78 at PageID #983.

The deputies' arguments to the contrary are unavailing. The deputies contend that the district court's determination that the video shows "some movement" of Rowlery's arm and leg during the takedown process establishes that the deputies reasonably concluded that Rowlery was resisting their efforts to guide him into his cell and to handcuff him. Appellants' Reply Brief at 7. However, this movement may not have indicated to the deputies that Rowlery was resisting. R. 78 at PageID #983−984. For instance, the district court could have concluded that

the deputies understood that they had caused Rowlery's arms and legs to move by pushing against him as they took him down to the floor and handcuffed him. The video supports this inference because it shows that the deputies used force against Rowlery to bring him to the floor and to handcuff him. *Video* at 18:37:54−18:38:27. Further, Rowlery testified that he fully complied with the orders that he was given and that he did not push back or tighten up on any deputy. R. 63-3 at PageID #658, #680. Accordingly, the video of some movement of Rowlery's arms and legs during the takedown process did not objectively eliminate the possibility that there was no need or justification for the application of force.

To the extent that the video objectively requires a conclusion that Rowlery failed to comply fully with Winston's verbal commands to enter a cell, this does not require reversal. Appellants' Reply Brief at 5−7. Although the video shows that Rowlery did not voluntarily step into a cell after Winston repeatedly pointed his arm toward a nearby cell door, *Video* at 18:37:18−18:37:50, the deputies did not argue in their motion for summary judgment that Rowlery's failure to enter a cell was sufficient to justify their use of force. Rather, the deputies argued that they were protected by the doctrine of qualified immunity because Rowlery not only disobeyed verbal orders to enter a cell, but also physically resisted the deputies' efforts to escort him into a cell by tensing and throwing his arm out after Winston placed his hand on Rowlery's arm. R. 74 at PageID #918−919, #923; R. 77 at PageID #969. Similarly, on appeal, the deputies contend they are protected by the doctrine of qualified immunity because it is constitutional to subdue a physically resistant and non-compliant pre-trial detainee who continues to resist against the officer as he attempts to handcuff the detainee. Appellants' Brief at 37; *see also* Appellants' Reply Brief at 13. As stated above, the video does not blatantly contradict the district court's conclusion that Rowlery may have complied with the deputies' efforts to guide him into his cell,

take him to the floor, and handcuff him. The district court could therefore conclude, consistent with the video, there was a genuine issue of material fact about whether Rowlery had engaged in non-compliant behavior that justified the application of force. R. 78 at PageID #982−983.

Second, the video also does not objectively disprove that Winston, with the assistance of the other deputies, punched Rowlery in the back of the head after he was already handcuffed. R. 78 at PageID #983−984. The deputies argue that a reasonable juror would not believe Rowlery's testimony that Winston beat Rowlery after he had been handcuffed because the video establishes that the deputies "discontinued their use of force once Rowlery was handcuffed." Appellants' Brief at 38; R. 63-3 at PageID #658−660. This argument fails because, as the district court noted, the video does not resolve this factual dispute. R. 78 at PageID #983. The video establishes that Rowlery was handcuffed at some time during the struggle that occurred on the ground because the video shows Rowlery sitting on the ground with his hands handcuffed behind his back after this struggle concluded. *Video* at 18:38:32. Further, although the video does not show Winston punching Rowlery, Rowlery is not completely visible during the struggle that occurred on the ground because Winston and the other deputies partially block the view of Rowlery's body. *Id.* at 18:38:00−18:38:27. The video therefore does not blatantly contradict the district court's conclusion that Winston may have punched Rowlery after he had been handcuffed.

The video also does not utterly discredit the district court's determination that "Mangrum, Pritchard, and Martin assisted [Winston] in either the takedown of [Rowlery] or in holding him down by his feet and shoulders during the time when [Winston] is alleged to have punched [Rowlery] in the back of the head." R. 78 at PageID #983. The video shows that after Rowlery was forced to the floor, the deputies surrounded him and held his shoulders and feet.

*Video* at 18:38:00−18:38:27.  Mangrum, Pritchard, and Martin also testified that they assisted in either restraining Rowlery while he was on the floor or in handcuffing him.  R. 63-6 at PageID #720, #724; R. 63-7 at PageID #741−742; R. 63-8 at PageID #752−753.

This fact-based appeal is therefore dismissed for lack of jurisdiction.

**SUHRHEINRICH, J., dissenting**.

Generally, a defendant may not appeal a denial of qualified immunity if the issue on interlocutory appeal raises a genuine factual dispute. *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). And of course, in making that determination, we view all facts in the nonmovant's favor. There is an exception, however, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The exception most commonly applies where the record contains a videotape depicting the genuinely disputed facts and contradicting one party's version of events. *See id*. In such a scenario, the court must view the facts "in the light depicted by the videotape." *Id*. at 380. The court must draw reasonable inferences in favor of the nonmoving party from the video recording, but only "*to the extent supportable by the record*." *Id*. at 381 n.8. Once this occurs, the reasonableness of the defendant officer's actions "is a pure question of law." *Id*.

In my view, the video "utterly discredits" the district court's conclusion that there are genuine issues of fact about whether: (1) Rowlery was compliant with the officers' commands, and (2) Winston, with the help of the other defendants, punched Rowlery after he had been handcuffed. Thus, I believe that we have interlocutory appellate jurisdiction to reverse the district court's denial of summary judgment on the basis of qualified immunity. *See Scott*, 550 U.S. at 380; *Clay v. Emmi*, 797 F.3d 364, 368 (6th Cir. 2015); *Romo v. Largen*, 723 F.3d 670, 674 n.3 (6th Cir. 2013). For this reason I respectfully dissent.

The Supreme Court recently ruled that objective reasonableness is the standard we apply in assessing the force used against a pretrial detainee and reminded courts that the standard is not to be applied "mechanically," but must be based on the "facts and circumstances of each

particular case.'" *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The court is to make this assessment "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* The court must also consider the legitimate interests in managing a jail, "acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." *Id.* at 2474.

When I view the video and the undisputed testimony through this legal lens, and in the light most favorable to Rowlery to the extent supported by the record, it is clear to me that the officers in this case did not use excessive force in taking down Rowlery and could not have delivered any kind of blow that could plausibly be characterized as a punch.

Rowlery testified in his deposition that Winston told him two times that he wasn't being released and ordered, "Give me your coat, you're going back in your cell." ID# 657. Rowlery then testified that Winston accused him of "refusing to comply" with Winston's order to hand over his coat, ordered Rowlery to "[g]et down on the floor," grabbed Rowlery and threw him against the wall and forced him to the ground before Rowlery could comply. ID# 658.

The video reveals that there is more to the story. As the majority acknowledges, the video shows Winston gesture toward a nearby cell with an open door. *Video* at 18:37:18-18:37:33. Winston pointed toward the cell several more times, but Rowlery remains standing still. He also did not hand his jacket to Winston, but eventually took it off and threw it on the floor. He did not enter the cell. *Id.* at 18:37:36-18:37:45. Winston gestured toward the cell again with his arm, but Rowlery did not go into the cell. *Id.* at 18:37:45-18:37:50. To my mind, the foregoing behavior demonstrated "active resistance—on the part of [Rowlery] [suggesting]

volitional and conscious defiance." *Eldridge v. City of Warren*, 553 F. App'x 529, 533-34 (6th Cir. 2013).

The question becomes: what were the officers supposed to do now? It seems to me that Winston did what any reasonable officer would do when facing a pretrial detainee (especially one who is 6'4" and 280 lbs.) refusing to follow orders to return to his cell in the cell area hallway—Winston attempted to restrain Rowlery by grabbing his arm and pinning him against the wall. *Video* at 18:37:52-18:37:56. The other deputies stepped in to assist and forced Rowlery face-down onto the floor, in order to handcuff him, in a struggle that lasted about thirty seconds. *Id*. at 18:37:57-18:38:27.

The district court and the majority sense possible "foul play" because the video does not show obvious signs of Rowlery "pushing back" or "tightening up" on the officers after Winston grabbed Rowlery's arm. But the video recording demonstrates that Rowlery *was not cooperating* with Winston's instructions in the seconds leading up to the moment Rowlery allegedly yielded to Winston's touch. In other words, contrary to Rowlery's assertions and the district court's findings, the video unequivocally demonstrates that Rowlery was not complying with Winston's commands. And even if Rowlery indeed became compliant after Winston touched him, or after the officers took him to the ground, it was not objectively unreasonable for the officers to distrust Rowlery's sudden change of heart and opt to restrain him anyway as a precaution to protect not only themselves, but to maintain security within the jail cell area. *Cf. Goodrich v. Everett*, 193 F. App'x 551, 556 (6th Cir. 2006) (holding that physical tackling of the plaintiff, who was suspected of a violent crime, admittedly disobeyed police orders, and evaded police officers, was not excessive force because a reasonable officer could have concluded that the plaintiff's actions in walking towards the police station entrance were "at best ambiguous" and would not have

known that the plaintiff had become compliant during the takedown because he did not clearly communicate his compliance to the officers). In short, when the events in question are analyzed under the proper test—under the totality of the circumstances facing the defendant officers—the takedown was objectively reasonable. Although Rowlery is protected from the use of excessive force that amounts to punishment, *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) (citing *Graham*, 490 U.S. at 395 n.10), it is equally true that that "[i]n effecting a seizure, law enforcement agents are authorized to use 'some degree of physical coercion' without violating the Fourth Amendment." *Goodrich*, 193 F. App'x at 555 (quoting *Graham*, 490 U.S. at 396).

This brings us to the question of the degree of force used. *See Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 776 (6th Cir. 2004) (noting that force used must "not be unconstitutionally disproportionate in degree to the circumstances"). As the majority notes, the video shows that the defendant officers were holding Rowlery down by his shoulders and feet. It also shows that they did not "kick" and "beat" or "strike" Rowlery, let alone "pummel" him, as he claimed, but simply tried to hold him down until he could be handcuffed. And the whole struggle lasted no more than thirty seconds. Although the crime Rowlery committed was not serious and he was not attempting to flee, Rowlery, at 6'4" and 280 lbs., potentially posed a threat to the officers and the jail security, *see Graham*, 490 U.S. at 396 (discussing factors to assess in objective reasonableness inquiry), and quantum of force used in trying to handcuff him was not disproportionate to his act of defiance. *See Goodrich*, 193 F. App'x at 556 (holding that the plaintiff failed to create fact question the shoving, kneeing, and kicking that occurred during his handcuffing was excessive force because the plaintiff did not "allege a level of force or brutality that a reasonable officer would consider excessive"); *cf. Malory v. Whiting*, 489 F. App'x 78, 83-84 (6th Cir. 2012) (officers used excessive force on the plaintiff where his offense

was nonviolent and he was compliant during transport to police station but refused to sign his full name to a property form and put his belt on his shoulder when ordered to take off his clothing and in response one officer slammed arrestee to the ground and drove his knee into his temple, and another officer stepped on arrestee's knee and punched him in the ribs); *Kijowski v. City of Niles*, 372 F. App'x 595, 600-01 (6th Cir. 2010) (officers used excessive force on the plaintiff, a wedding guest sitting in his truck talking on his phone and not disobeying police commands, when they dragged him from his truck, smashed his phone, tased him, and kicked him); *Landis v. Baker*, 297 F. App'x 453, 457-58 (6th Cir. 2008) (officers used excessive force when they tased a suspect pinned to the ground with officers on his back forcing his head under muddy water); *Roberts v. Manigold*, 240 F. App'x 675, 676 (6th Cir. 2007) (officer used excessive force when he tased a suspect repeatedly after he was "completely pinned" on the ground).

As to the alleged "punch," the majority acknowledges that the video does not show Winston punching Rowlery. Although not every movement is perfectly perceptible because the officers were gathered around Winston and Rowlery during the takedown, there is no movement that necessarily accompanies a sharp thrust or a blow detectible from either camera angle. The video shows no one retracting their arm in preparation to deliver a blow. The thirteen stitches do not prove the punch either, because it is not surprising that Rowlery's forehead made contact with the ground during the takedown.

In short, the video, along with Rowlery's own admissions, viewed in totality of all the circumstances, renders Rowlery's version of the story, which attempts to portray a cooperative pretrial detainee as the victim of brute physical force by defendants, a "visible fiction." *Scott*, 550 U.S. at 381.

For these reasons, I would reverse the judgment of the district court and grant summary judgment to the defendant officers.