**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0456n.06

Case No. 18-4180

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Aug 28, 2019

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KENNETH F. MORAN, | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| TIMOTHY ROGERS, et al., | ) | THE SOUTHERN DISTRICT OF |
|     Defendants, | ) | OHIO |
| | ) | |
| ADAM C. PARKS, | ) | |
|     Defendant-Appellant. | ) | |

**BEFORE: CLAY, LARSEN, and READLER, Circuit Judges.**

**CHAD A. READLER, Circuit Judge.** Where a defendant appeals from an unsuccessful assertion of qualified immunity, we recognize a narrow exception to the ordinary presumption against interlocutory appeals. For decisions rejecting qualified immunity on legal grounds, we afford a defendant an immediate right to appeal. But we do not afford the defendant that same right where the appeal boils down to a challenge to the sufficiency of the evidence. Save for extreme circumstances where a plaintiff's theory of the case is blatantly contradicted by the record, we are without jurisdiction to resolve in an interlocutory posture an appeal raising a purely fact-based challenge to a denial of qualified immunity. *See DiLuzio v. Village of Yorkville,* 796 F.3d 604, 609–10 (6th Cir. 2015).

That flaw dooms Adam Parks's appeal. He principally makes challenges to the district court's factfinding. The section labeled "argument" in his opening brief is, for the most part, a summary of the deposition testimony below. Tellingly, it cites no case law. Another section in his brief is labeled "the trial court's error." But here too there is no traditional legal argument. Rather, that one-paragraph section makes the now-familiar argument that the district court erred in its assessment of the evidence. The district court's seminal error, Parks contends, was "conflating the recollections of three witnesses to come up with a fourth version of the facts," one that does not support a finding of qualified immunity for Parks.

We cannot say for certain how a factfinder would ultimately be inclined to read this evidence. For today's purposes, it is enough to note that the district court's assessment of the facts is not blatantly contradicted by the record. We accordingly **DISMISS** this appeal for lack of jurisdiction.

## I. BACKGROUND

Plaintiff Kenneth Moran alleges that he was denied treatment for urgent medical problems while incarcerated at the county jail in Coshocton County, Ohio. Invoking 42 U.S.C. § 1983, he names as Defendants a collection of jail guards and their supervisors: Coshocton County Sheriff Timothy Rogers, Lieutenant Chad Jackson, and Deputy Adam Parks.

Moran's claims trace back to what he believes to have been a spider bite on his arm. According to his deposition testimony, when he first noticed the bite, Moran asked for and was provided Neosporin and Band-Aids. At least for the next few days, Moran was feeling fine. One morning, however, Moran began to feel ill, and he was taken to the hospital "pretty quick[ly]" thereafter.

Through his affidavit and deposition testimony, Parks adds some detail to Moran's telling of the facts. On the morning of the day Moran would ultimately go to the hospital, Parks says, Brian Gross, one of Moran's cellmates, told Parks that Moran's arm was swollen. After hearing from Gross, Parks assumes he went to see Moran. Believing that Moran was not in need of emergency treatment, Parks began making arrangements to transport Moran to see the jail's physician, Dr. Goff. Moran was moved outside his cell to a waiting area. But when Moran asked to use the restroom, Parks noticed that Moran had trouble balancing himself, and Moran complained he felt dizzy. Moran was transported to the hospital within minutes.

Gross's testimony adds further features to the record below. According to Gross, Moran was "out of it" when he woke up on the day he was ultimately transferred to the hospital. Moran had defecated himself, the swelling on his arm was the size of a tennis ball, and at one point, Moran even walked into a wall. Gross immediately informed Parks and another officer of Moran's condition. The officers went to see Moran within minutes. While Gross could not remember how long it was before Moran left for the hospital, he estimated that it was half an hour.

When Moran arrived at Coshocton Memorial Hospital, the doctors found him to be in critical condition. They quickly transferred him to a larger hospital in Zanesville. From there, Moran was life-flighted to a hospital in Columbus where he had surgery to remove part of his triceps. Moran's breathing and kidneys failed, and he suffered cardiac arrest. Ultimately, Moran received several weeks of intensive medical attention, followed by a prolonged period of rehabilitation.

Upon his recovery, Moran filed this action against three law-enforcement officials at the Coshocton County jail: Rogers, Jackson, and Parks. He alleged the officials violated his clearly-established Eighth Amendment right to medical treatment. Following discovery, Defendants

moved for summary judgment based on their assertion of qualified immunity. Defendants believed summary judgment was appropriate because they acted diligently in response to Moran's need for medical attention. The district court granted the motion as to Rogers and Jackson but denied the motion as to Parks.

With respect to Parks, the district court held that the Eighth Amendment clearly establishes that an officer may not delay arranging medical attention for a person in his care suffering from a serious medical condition. And, the district court found, the evidence could support the conclusion that Parks recklessly delayed arranging urgently needed medical attention for Moran. Citing our decision in *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013), the district court noted that there is both an objective and subjective component to such deliberate indifference claims. With respect to the objective component of the deliberate-indifference claim, the district court determined that Moran's medical condition was sufficiently severe. And as to the subjective component of the claim, viewing the evidence in the light most favorable to Moran, a reasonable jury, the district court explained, could conclude that Parks knew about Moran's urgent need for medical attention but delayed arranging treatment for up to three hours. Because a reasonable jury could thus conclude that Parks acted with deliberate indifference, both as an objective and subjective matter, Parks's summary judgment motion failed. Parks now appeals that decision.

## II. JURISDICTION

We ordinarily do not have jurisdiction to hear interlocutory appeals of a district court's denial of a motion for summary judgment. *See Comstock v. McCrary*, 273 F.3d 693, 700 (6th Cir. 2001). As a general rule, we hear appeals that have a final judgment behind them, not appeals from cases that are non-final, with their ultimate resolution uncertain. *Id.* But there is a well-established exception to that general rule for cases raising the issue of qualified immunity. That

is, we frequently hear interlocutory appeals by government officials who challenge the denial of summary judgment based on qualified immunity. *Brown v. Chapman*, 814 F.3d 436, 443–44 (6th Cir. 2016) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526–29 (1985)). We do so because qualified immunity is a complete defense, one that, where applicable, saves the government official being subject to suit. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To save that government official from the burdens of litigation, we necessarily must address qualified immunity as early as possible in the proceeding. *Id.* at 232.

Of course, few things in law are absolute. Appellate review of qualified immunity decisions is a prime example. As just explained, allowing interlocutory appeals in qualified immunity cases is an exception to our typical practice regarding interlocutory appeals. But that exception has its own exception. While we will hear qualified immunity appeals on an interlocutory basis, we do not have jurisdiction to do so if the issue appealed is solely whether the record contains sufficient evidence to permit a particular finding of fact at trial. *See Johnson v. Jones*, 515 U.S. 304, 319–20 (1995); *DiLuzio,* 796 F.3d at 609–10.

And yet there is one more relevant exception—what one might call an exception to the exception to the exception. While we typically will not hear interlocutory appeals in qualified immunity cases that are in essence challenges to a district court's assessment of the facts, we will consider factual issues in those appeals where the district court's factual determinations are "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also DiLuzio,* 796 F.3d at 609 (quotation omitted). *Scott* offers one such example. There, an officer challenging the denial of qualified immunity argued on appeal that a video recording of the car chase at issue contradicted the plaintiff's version of events, entitling the officers to qualified immunity. *Scott*, 550 U.S. at 378–81. Noting that the video undermined the plaintiff's narrative so as to make it a

"visible fiction," the Supreme Court held that it was proper for the appellate court to entertain the officer's challenge to the district court's determination that a reasonable jury could believe the plaintiff's account of the incident. *Id.* at 380–81; *see also Bishop v. Hackel,* 636 F.3d 757, 769 (6th Cir. 2011).

In the wake of *Scott*, we have emphasized the limited range of cases when the exception to the bar on interlocutory review of "fact-based appeals" applies. *DiLuzio,* 796 F.3d at 609–10. In *Younas v. Pellerito*, 739 F.3d 885 (6th Cir. 2014), we rejected interlocutory review even where witness testimony contradicted the plaintiff's version of events because the testimony was "not the type of evidence in the record which utterly discredit[s]" the plaintiff's narrative. *Id.* at 889. (internal quotations omitted) (alteration in original). In *Lindsly v. Worley*, 423 F. App'x 516 (6th Cir. 2011), we lacked jurisdiction to hear an appeal where the plaintiff's version of events, although contradicted by other evidence, was not "blatantly and demonstrably false." *Id.* at 518. And in *Rowlery v. Genesee County*, 641 F. App'x 471 (6th Cir. 2016), we likewise did not have jurisdiction to hear an appeal that challenged the district court's conclusion that there remained genuine disputes of material fact. *Id.* at 478. At issue there, as in *Scott,* was a video recording. *Id.* As in *Scott*, the video supported the defendant's argument. But it did not show the relevant incident in full, and thus, unlike in *Scott,* did not utterly discredit the district court's conclusion. *Id.* at 476–78.

This case falls into the category of fact-based appeals. Taking the version of events that was most favorable to Moran, the non-moving party, the district court denied summary judgment to Parks on the basis that genuine issues of material fact remained in dispute. For example, when did Parks learn that Moran urgently needed medical care? And when did Parks act on that knowledge? Those questions are quintessentially factual in nature. While Parks takes issue with

the district court's reading of the record, he has not presented evidence that "utterly discredits" the district court's conclusions or shows that the factual reading below is "blatantly and demonstrably false." *Younas*, 739 F.3d at 889; *see Lindsly*, 423 F. App'x at 518.

Parks zeroes in on the district court's belief that the evidence supports a three-hour delay between when Parks learned of Moran's need for urgent care and then arranged such care. And Parks argues there is little to no evidence to support that length of a delay. To be sure, Moran says that he was taken to the hospital soon after his condition worsened. But Gross says that Moran was "out of it" on the morning in question. A reasonable jury could, therefore, decide not to credit Moran's testimony on this point. Gross also testified that there was a tennis-ball sized swelling on Moran's arm by the time Parks looked at it just after 7:00 a.m. Parks, for his part, assumes he saw Moran shortly after 7:00 a.m. He also asserted that he arranged transportation for Moran at approximately 10:30 a.m. While some testimony indicates there may have been little time between Parks learning of Moran's urgent need for medical care and Moran being transported to receive such care, the district court concluded that a reasonable jury could also believe that Parks learned of Moran's need for care just after 7:00 a.m. but delayed seeking medical attention for Moran until approximately 10:30 a.m. *See generally Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (holding that a district court, when ruling on a motion for summary judgment, must read the record as a whole and then draw all reasonable inferences most favorable to the nonmoving party). That conclusion falls well short of the high bar for review under *Scott*.

Parks's reply attempts to repackage his fact-based appeal as a legal challenge, asking (1) whether the factual disputes are "genuine" and, if so, (2) whether those disputes are "material" to the case. The first issue has already been dispatched. Again, we generally lack jurisdiction to "determine[] whether or not the pretrial record sets forth a 'genuine' issue of fact." *Johnson*,

7

515 U.S. at 319–20. The second issue was not properly raised. In his initial brief, Parks argued only that the district court's denial of qualified immunity was "based on an alleged timeline of events not supported by the record or witnesses." Parks therefore failed to raise in a timely manner his materiality argument, and we decline to address it as a result. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018).

The district court also concluded a three-and-a-half-hour delay, if shown, could support a finding that Parks violated Moran's clearly established Eighth Amendment rights. Parks does not challenge that legal determination, and so we do not address it here.

All told, the district court's reading of the record is not "blatantly and demonstrably false." *Lindsly*, 423 F. App'x at 518. That being so, the *Scott* exception does not apply. We thus do not have jurisdiction to hear Parks's challenge to the district court's assessment of the record.

### III. CONCLUSION

For these reasons, we **DISMISS** this appeal for lack of jurisdiction.