RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0043p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

SHIRLEY BROWN, Individually and as Administratrix
of the Estate of Rodney Brown,

                *Plaintiff-Appellee*,

  v.

MICHAEL CHAPMAN, et al.,

                *Defendants*,

RICHARD RUSNAK; JOHN SATTLER; JAMES MERRITT;
CITY OF CLEVELAND,

                *Defendants-Appellants*.

No. 15-3158

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:11-cv-01370—Lesley Wells, District Judge.

Argued: December 4, 2015

Decided and Filed: February 19, 2016

Before: MOORE, CLAY, and GILMAN, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** John P. Bacevice, Jr., CITY OF CLEVELAND, Cleveland, Ohio, for Appellants. Alphonse A. Gerhardstein, GERHARDSTEIN & BRANCH, CO, LPA, Cincinnati, Ohio, for Appellee. **ON BRIEF:** John P. Bacevice, Jr., CITY OF CLEVELAND, Cleveland, Ohio, for Appellants. Alphonse A. Gerhardstein, GERHARDSTEIN & BRANCH, CO, LPA, Cincinnati, Ohio, for Appellee.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  Rodney Brown died after police officers tasered him, physically subdued him, and placed him in a patrol car.  His mother, Shirley Brown, filed a lawsuit against the police officers and the City of Cleveland, alleging excessive force and various state-law claims.  She also accused the officers of being deliberately indifferent to his safety.  Defendants moved for summary judgment.  In addition to disputing their liability, they asked the district court not to treat plaintiff's accusation of deliberate indifference as a properly pleaded legal claim.  The district court denied their request, and granted in part and denied in part the remainder of their motion.

Richard Rusnak, John Sattler, James Merritt, and the City of Cleveland appeal the district court's recognition of plaintiff's deliberate-indifference claim and the district court's denial of summary judgment on that claim.  We **AFFIRM** in part and **DISMISS** in part because we have limited jurisdiction over appeals from denials of summary judgment.

**I.  BACKGROUND**

**A.  Factual Background**

On December 31, 2010, at 8:45 P.M., police officers Michael Chapman and Belal Ilain signaled for Rodney Brown to pull over.  R. 27-15 (Synopsis at 1) (Page ID #927).  The officers claim that they saw Brown driving without headlights on, *id.*, though eyewitnesses dispute this, R. 33-8 (Ellston Decl. ¶ 4) (Page ID #1144); R. 33-9 (Vaughn Decl. ¶ 4) (Page ID #1146).

The officers walked up to Brown's vehicle and asked for his license and registration.  R. 25-2 (Chapman Dep. at 13) (Page ID #150); R. 25-3 (Ilain Dep. at 10) (Page ID #286).  Before Brown could retrieve the documents, the officers ordered him out of the car, unsettled by his slow speech.  R. 25-3 (Ilain Dep. at 10–13) (Page ID #286–89); *see also* R. 27-15 (Synopsis at 1) (Page ID #927).  Brown complied, and the officers told him to walk to the back of the vehicle.  R. 25-2 (Chapman Dep. at 14) (Page ID #151).  While the officers were patting him down,

Chapman hit Brown in the back of his neck and pushed Brown onto the vehicle. R. 33-8 (Ellston Decl. ¶¶ 7–8) (Page ID #1144); R. 33-9 (Vaughn Decl. ¶ 7) (Page ID #1146). Brown wrestled free of the officers' grip. R. 25-2 (Chapman Dep. at 14–15) (Page ID #151–52); R. 25-3 (Ilain Dep. at 14) (Page ID #290). The officers claim that Brown was resisting arrest, *see* R. 25-2 (Chapman Dep. at 15) (Page ID #152); R. 25-3 (Ilain Dep. at 14) (Page ID #290), but eyewitnesses say that Brown was simply trying to protect himself, *see* R. 33-8 (Ellston Decl. ¶ 8) (Page ID #1144); R.33-9 (Vaughn Decl. ¶ 8) (Page ID #1146). Chapman then turned toward Brown and discharged his taser at Brown's chest. R. 25-2 (Chapman Dep. at 15) (Page ID #152); R. 25-17 (Chapman Taser Information) (Page ID #851). Brown ran, and the two officers followed. R. 27-15 (Synopsis at 1) (Page ID #927).

Chapman and Ilain caught up to Brown and wrestled him to the ground, tasering him to subdue him. *Id.* at 1–2 (Page ID #927–28); *see also* R. 25-17 (Chapman Taser Information) (Page ID #851): R. 25-18 (Ilain Taser Information) (Page ID #852). Ilain requested backup, and additional officers arrived soon after. R. 25-1 (Radio Event Chronology) (Page ID #130); R. 27-15 (Synopsis at 2) (Page ID #928). The officers notified dispatch that they had successfully handcuffed Brown at 8:52 P.M., seven minutes after Chapman and Ilain first pulled Brown over. R. 4 (Tr. of Dispatch Audio at 2) (Page ID #13).

Immediately after they handcuffed him, Brown told the officers he was having trouble breathing:

| | |
|---|---|
| VOICE: | Okay. Male's in custody. Slow it down. Slow it down. Male's in custody at 20:52. |
| VOICE: | All right. Radio any car in the area of 3038 East 125 downstairs. |
| VOICE: | Over here. |
| VOICE: | Be careful. |
| VOICE: | I can't breathe. |
| VOICE: | So? Who gives a fuck. |
| VOICE: | Not here. Be careful. |
| VOICE: | (inaudible). |
| VOICE: | I can't breathe, man. |
| VOICE: | You got his (inaudible) on him? |
| VOICE: | (inaudible). |

*Id.* at 2–3 (Page ID #13–14).   Rusnak, Merritt, Erik Melendez (the officer who responded to Brown's statement with "So?   Who gives a fuck"), and a fourth officer escorted Brown to Rusnak and Merritt's patrol car.  R. 25-8 (Rusnak Dep. at 23–24) (Page ID #573–74); *see also* R. 25-5 (Melendez Dep. at 37) (Page ID #464).   Brown went limp before he reached it, and the officers had to go around to the other side of the car and drag Brown onto the back seat.  R. 27-15 (Synopsis at 2) (Page ID #928); R. 25-7 (Merritt Dep. at 13) (Page ID #525).   Once Brown was inside, the officers closed the patrol car's doors.  R. 25-7 (Merritt Dep. at 13) (Page ID #525).

Rusnak used his radio to request EMS at 8:55 P.M., and told the dispatcher that officers had tasered Brown but that he was conscious and breathing.  R. 28-8 (Rusnak Dep. at 32–34) (Page ID #582–84).   In his deposition, Rusnak explained that this was department policy, and that he did not request EMS in response to any physical symptoms Brown exhibited.  *Id.* at 32 (Page ID #582).   EMS was not notified until 9:00 P.M.  R. 25-1 (Radio Event Chronology at 2) (Page ID #131).

Rusnak and Merritt stayed by their patrol car for the remainder of the night, where they watched Brown's condition deteriorate.  R. 25-7 (Merritt Dep. at 15–18) (Page ID #527–30); R. 25-8 (Rusnak Dep. at 34–36) (Page ID #584–86).   At one point, Merritt heard Brown say he was having trouble breathing, so Merritt rolled down the back windows halfway.  R. 25-7 (Merritt Dep. at 14) (Page ID #526).   Rusnak shined his flashlight into Brown's eyes, and Brown's pupils did not constrict.[1]   R. 25-8 (Rusnak Dep. at 29) (Page ID #579).   Rusnak also asked Brown questions in an attempt to engage him, but Brown gave unintelligible answers.  *Id.* at 29–30 (Page ID #579–80).   Sattler, a sergeant, testified that when he arrived he saw Brown sitting in the back of the patrol car, slumped over and unresponsive.  R. 25-15 (Sattler Dep. at 12–13) (Page ID #830–31).

EMS arrived at 9:07 P.M., seven minutes after they were notified and twelve minutes after Rusnak first requested medical aid over the radio.  R. 27-14 (EMS Report at 1) (Page ID #923).   EMS found Brown "propped up" on the curb, leaning against the leg of one of the

---

[1]Rusnak's actual testimony is that Brown's eyes "would not dilate" when Rusnak flashed a light at them; what Rusnak likely meant is that they would not constrict.  *See* R. 25-8 (Rusnak Dep. at 29) (Page ID #579).

officers.  R. 25-12 (Fletcher Dep. at 19–20) (Page ID #757–58).  Brown had no pulse, and EMS was unable to resuscitate him.  R. 27-14 (EMS Report at 1) (Page ID #923).

**B.  Procedural Background**

Brown's mother filed a complaint against named and unnamed officers, alleging excessive force, assault and battery, and wrongful death.  R. 1 (Compl. ¶¶ 25–27) (Page ID #4–5).  She also stated that the officers did not have probable cause to stop Brown's vehicle and that they were deliberately indifferent to Brown's safety, though she did not formally plead either claim.  *Id.* ¶¶ 16, 21, 22 (Page ID #3–4).  She amended her complaint once, identifying some of the unnamed officers and adding the City of Cleveland as a defendant.  R. 15 (First Am. Compl. at 1–2) (Page ID #58–59).

Defendants filed a joint motion for summary judgment on all claims.  R. 25 (Defs. Mot. for Summ. J.) (Page ID #92).  The officers asserted that they were entitled to qualified immunity, and the City asserted that plaintiff could not establish municipal liability.  *Id.* at 1 (Page ID #97).  Defendants also asked the district court not to treat plaintiff's accusation of deliberate indifference as a properly pleaded legal claim (though they did not make the same request with respect to her accusation that the officers did not have probable cause to stop Brown).  *Id.* at 12–13, 19–22 (Page ID #108–09, 115–18).  Still, because they thought plaintiff would likely pursue it, defendants responded to the merits of plaintiff's deliberate-indifference accusation.  *Id.* at 20–22 (Page ID #116–18).  In their reply brief, defendants took a harder line, asking the district court to "dismiss" the claim because recognizing it would unfairly prejudice them.  R. 35 (Reply Br. in Support of Mot. for Summ. J. at 15) (Page ID #1168).

The district court allowed plaintiff to proceed with her deliberate-indifference claim (as well as with her probable-cause claim).  R. 38 (Dist. Ct. Op. at 18–19 n.3) (Page ID #1238–39). The district court then granted in part and denied in part defendants' motion for summary judgment.  As is relevant here, the district court denied summary judgment to Rusnak, Merritt, Sattler, and the City of Cleveland on plaintiff's deliberate-indifference claim.  *Id.* at 27–29 (Page ID #1247–49).  The district court granted summary judgment to Melendez, however, concluding that he could not have known that Brown was struggling to breathe.  *Id.* at 23–24 (Page ID

#1243–44).   Rusnak, Merritt, Sattler, and the City timely appealed.   R. 41 (Defs. Notice of Appeal) (Page ID #1256).  Plaintiff also appealed, but her arguments are considered in a separate opinion in No. 15-3506.

## II.  ANALYSIS

### A.  Rule 15(a) Amendment

We review a district court's decision to allow an amendment of a pleading for an abuse of discretion.[2]  *Dillon v. Cobra Power Corp.*, 560 F.3d 591, 597 (6th Cir. 2009).  In this context, an abuse of discretion occurs when a district court "fails to state the basis for its [decision] or fails to consider the competing interests of the parties and likelihood of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

Federal Rule of Civil Procedure 15(a)(2) states that if a party can no longer amend its pleading as a matter of course, it "may amend its pleading only with the opposing party's written consent or the court's leave."  Because Rule 15(a)(2) directs courts to "freely give leave when justice so requires," the rule embodies a "liberal amendment policy." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002).  Despite this policy, denial may be appropriate when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Defendants argue that because plaintiff did not plead a deliberate-indifference claim in either her initial complaint or her amended complaint, they were unfairly prejudiced by the district court's decision to allow the amendment.  Defs. Br. at 9–10.  The record, however, does not support their argument.  Although she did not formally plead a deliberate-indifference claim, plaintiff accused the officers of deliberate indifference in the "facts" section of both her initial and her amended complaint, stating that the officers "acted . . . with deliberate indifference to the

---

[2]We also review a district court's decision denying an amendment for an abuse of discretion, except when the district court's decision is based on a conclusion that the amendment would be futile, in which case we review the denial de novo. *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014).

rights and safety of Mr. Brown when they interacted with him on December 31, 2010, including, but not limited to, their stop of his vehicle and their use of force against him." R. 1 (Compl. ¶ 22) (Page ID #4); R. 15 (First Am. Compl. ¶ 22) (Page ID #61–62). This appears to have put defendants on notice: in their motion for summary judgment, defendants acknowledged that plaintiff would likely argue that the officers were deliberately indifferent to Brown's medical needs. R. 25 (Defs. Mot. for Summ. J. at 19–20) (Page ID #115–16).

The district court noted as much in its opinion. In allowing plaintiff to proceed with her claim, it stated: "Here, the defendants, fully anticipating that the plaintiff was seeking relief on this ground despite the absence of a formal claim, filed a motion for summary judgment that included arguments as to why qualified immunity protected them from a deliberate indifference claim." R. 38 (Dist. Ct. Op. at 18 n.3) (Page ID #1238). The district court then allowed the amendment, noting that Rule 15(a)(2) directs courts to freely give leave "when justice so requires" and that plaintiff had a "potentially meritorious claim." *Id.* at 18–19 n.3 (Page ID #1238–39). Defendants have not shown that the district court failed to state the basis for its decision or that it failed to consider the parties' competing interests or the likelihood of prejudice—in particular the unfair prejudice that defendants claim. Thus, they have not shown that the district court's decision was an abuse of discretion.[3]

**B. Qualified Immunity**

### 1. Jurisdiction and Standard of Review

28 U.S.C. § 1291 grants circuit courts jurisdiction over "appeals from all final decisions of the district courts." This includes jurisdiction over collateral orders—orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action" that are "too important to be denied review." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467–68 (1978). An order denying qualified immunity is a collateral order because it is conclusive, separable from the merits of the action and, as the purpose of qualified immunity is to provide officers with "*immunity from suit*

---

[3]Because we conclude that the district court did not abuse its discretion in allowing plaintiff to proceed with her deliberate-indifference claim, we deny plaintiff's motion to take judicial notice as moot. *See* 6th Cir. Dkt. No. 25.

rather than a mere defense to liability," is effectively unreviewable on appeal from a final judgment. *Mitchell v. Forsyth*, 472 U.S. 511, 526–529 (1985).

This jurisdiction, however, is limited:  circuit courts can review a denial of qualified immunity only "to the extent that it turns on an issue of law"—the appeal cannot be from a district court's determination that there is a genuine dispute of material fact. *Id.* at 530; *see also Johnson v. Jones,* 515 U.S. 304, 319–20 (1995); *See v. City of Elyria,* 502 F.3d 484, 490 (6th Cir. 2007).  This is because circuit courts typically do not have jurisdiction over appeals from denials of summary judgment; these appeals must normally wait until the final disposition of the case. *See Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008).  Thus, this limitation ensures that circuit courts' consideration of appeals of adverse summary-judgment decisions based on denials of qualified immunity remains confined to the denials of qualified immunity and does not bleed over into a review of district courts' evaluation of genuine disputes of material fact.  The effect of this limitation is that the defendant appealing a denial of qualified immunity must concede the plaintiff's facts. *See Johnson,* 515 U.S. at 319–20; *Moldowan v. City of Warren,* 578 F.3d 351, 370 (6th Cir. 2009).  We review a district court's denial of summary judgment based on qualified-immunity grounds de novo. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013).

## 2.  Deliberate-Indifference Claim

### a.  Standard of Culpability

Defendants argue that the district court applied the wrong standard of culpability to plaintiff's deliberate-indifference claim.  Because this argument presents a purely legal issue, we have jurisdiction to consider it. *See Mitchell*, 472 U.S. at 530; *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 495 (6th Cir. 2012).

The deliberate-indifference standard is typically applied when a pretrial detainee alleges he was denied access to adequate medical care. *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 602 (6th Cir. 2005).  The standard requires the detainee show that "the defendants knew of and disregarded a substantial risk of serious harm to [the pretrial detainee's] health and safety." *Id.* at 603 (alteration in original) (internal quotation marks omitted).  This standard "is

sensibly employed only when actual deliberation is practical." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998). "[W]hen unforeseen circumstances demand an officer's instant judgment," such as in a high-speed vehicle chase, "even precipitate recklessness fails to inch close enough to harmful purpose." *Id.* at 853. Under these circumstances, a violation requires a showing of malice and "intent to harm." *Id.* at 854. Thus, the "critical question in determining the appropriate standard of culpability is whether the circumstances allowed the state actors time to fully consider the potential consequences of their conduct." *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002) (internal quotation marks omitted).

Defendants insist that the officers did not have enough time to appreciate the gravity of the situation—an assertion which largely rests on their argument that the district court considered the wrong time period. According to defendants, the district court should have considered only the officers' actions after Brown stopped breathing as opposed to after Brown became subdued, a period they insist was "at most a minute or a minute and a half." Defs. Br. at 12 (emphasis removed); *see also* R. 25-8 (Rusnak Dep. at 40) (Page ID #590). It is defendants, however, who have identified the wrong time period. Because the determining factor is "whether the circumstances allowed the state actors time to fully consider the potential consequences of their conduct," *Ewolski*, 287 F.3d at 510 (internal quotation marks omitted), the time period should begin with the point at which the officers could consider taking action, *see Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008) (considering the "time between taking Jones into custody and the time he stopped breathing"); *Estate of Owensby*, 414 F.3d at 603 (evaluating "the time Owensby was taken into custody and the time medical care was provided"). Here, the relevant time period begins with when the officers first knew Brown was having trouble breathing, not when he stopped breathing.

Plaintiff has offered evidence that the officers knew Brown was having trouble breathing early on in the night, and because defendants appeal from a denial of qualified immunity, they must concede the most favorable view of plaintiff's facts. *See Johnson*, 515 U.S. at 319–20; *Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998). The dispatch audio recorded Brown telling officers he could not breathe almost immediately after he was placed in handcuffs. R. 4 (Tr. of Dispatch Audio at 2–3) (Page ID #13–14). The officers even may have been aware that

Brown was having trouble breathing a minute or two earlier. Melendez, who responded to Brown's first complaint that he could not breathe with "So? Who gives a fuck," testified that Brown was making grunting noises while the officers were trying to handcuff him. R. 25-5 (Melendez Dep. at 33–34, 37) (Page ID #460–61, 464). But because the officers may not have been able to help Brown while they were trying to handcuff him, we will assume that the earliest the officers could have taken steps to get Brown assistance was immediately after he was handcuffed, when he first said "I can't breathe." This was at 8:52 P.M. R. 4 (Tr. of Dispatch Audio at 2) (Page ID #13). EMS arrived at 9:07 P.M. R. 27-14 (EMS Report at 1) (Page ID #923). We conclude that fifteen minutes is more than enough time for the officers to appreciate the consequences of their actions, and that therefore the district court properly applied the traditional deliberate-indifference standard as opposed to the heightened malice standard.

### b. Application of Sixth Circuit Precedent

Defendants also argue that the district court's conclusion that "[u]nder Sixth Circuit case law, simply calling EMS may not have been enough" was error. Defs. Br. at 13 (relying on *Jones*, 521 F.3d at 560). Defendants do not dispute the district court's statement of what Sixth Circuit precedent requires, however. Rather, they dispute the district court's application of the precedent to this case.

Defendants argue that the district court's "analysis ignores the actions Merritt, Rusnak, and Sattler . . . undertook to aid Brown in addition to calling EMS." *Id.* As defendants explain, the officers rolled down the backseat windows to get Brown more air, engaged him by asking him questions, checked his pupils, and removed his handcuffs before EMS came. *Id.* at 13–14. But as defendants acknowledge, the district court noted these facts in its opinion; it simply did not think that they precluded an application of *Jones*. *See id.* at 13. Thus defendants' argument, at base, is that the district court erred in its reading and evaluation of the facts. We do not have jurisdiction over such an argument. A circuit court's jurisdiction over denials of qualified immunity "does not extend to appeals that merely quibble with the district court's reading of the factual record, as opposed to appeals that challenge the legal premises of the district court's decision," including "what the relevant constitutional provision requires, whether plaintiff's record-supported allegations violate that constitutional guarantee and whether that constitutional

right was clearly established at the time of the underlying incident." *Leary v. Livingston Cty.*, 528 F.3d 438, 441 (6th Cir. 2008). Thus, we dismiss the remainder of defendants' appeal of the district court's denial of qualified immunity because it disputes the district court's application of Sixth Circuit precedent by raising only factual arguments.

**C. Municipal Liability**

Finally, the City of Cleveland argues that the district court erred by denying it summary judgment on plaintiff's deliberate-indifference claim, reasoning that because the officers cannot be held liable, the City cannot be held liable either. Defs. Br. at 14–15. We do not have jurisdiction over this appeal.

Unlike a denial of summary judgment on qualified-immunity grounds, a denial of summary judgment on municipal-liability grounds does not fall under the collateral-order doctrine. Although the doctrine's first two requirements would be satisfied—the denial is conclusive and review of it would not affect any other issue in the case—the City would not be able to satisfy the third requirement because this court could review the question of municipal liability after the district court rendered a final judgment. *See Cohen*, 337 U.S. at 546; *see also Coopers & Lybrand*, 437 U.S. at 467–68.

Nor can we exercise pendent appellate jurisdiction over the City's appeal. On an interlocutory appeal, when a municipality's right to summary judgment is "inextricably intertwined" with a qualified-immunity analysis, a court may exercise pendent appellate jurisdiction over the municipality's appeal. *Mattox v. City of Forest Park*, 183 F.3d 515, 523–24 (6th Cir. 1999); *see also Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 50–51 (1995). "[A] pendent appellate claim [is] inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal"—in other words "when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well." *Mattox*, 183 F.3d at 524 (quoting *Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995)). Plaintiff's claim against the officers turns on whether they knew of and disregarded a substantial risk of serious harm to Brown's health and safety; plaintiff's claim against the City is based on a theory of

ratification by failure to investigate. Although the two overlap, plaintiff's claim against the officers does not necessarily resolve her claim against the City. Indeed, a finding that the officers are entitled to qualified immunity would not foreclose a finding that the City was liable here. If, for example, "the [City] ratified [the officers'] misconduct which, though unconstitutional, was not in violation of clearly-established law," a court could find the officers immune but the City liable. *Baker v. Union Twp.*, 587 F. App'x 229, 237 (6th Cir. 2014). Accordingly, we conclude that the City's right to summary judgment is not "inextricably intertwined" here with the qualified-immunity analysis and therefore dismiss the City of Cleveland's appeal for lack of jurisdiction.

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's decision to allow plaintiff to amend her complaint, **AFFIRM** the district court's application of the deliberate-indifference standard, and **DISMISS** the remainder of the appeal for lack of jurisdiction.