NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0467n.06

No. 16-2039

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 10, 2017
DEBORAH S. HUNT, Clerk

MAURICE MOORE,

      **Plaintiff-Appellee,**

v.

CARMEN PALMER, et al.,

      **Defendants-Appellants**.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    SILER, CLAY, and McKEAGUE, Circuit Judges.

**CLAY, Circuit Judge.** Defendants Kenneth Niemisto and Shane Place bring this interlocutory appeal challenging the district court's order denying them qualified immunity in Plaintiff Maurice Moore's prisoner's civil rights suit brought pursuant to 42 U.S.C. § 1983. Moore asserts that Defendants violated his Eighth Amendment rights by failing to protect him from the violent acts of the other inmates at the Marquette Branch Prison, where Moore was incarcerated. For the reasons set forth below, we **DISMISS** the appeal for lack of jurisdiction.

**BACKGROUND**

Plaintiff Maurice Moore is a former inmate of the Michigan Department of Corrections ("MDOC"), where he was serving a sentence of twenty-five to fifty years for second-degree murder. On August 13, 1995, when Moore was incarcerated at the Adrian Correctional Facility, a riot began in Moore's wing of the facility. During the riot, Moore overheard other inmates discussing how they planned to assault a correctional officer. These inmates were alleged to be members of a gang called the Latin Counts. Upon hearing of the inmates' plans, Moore decided

to warn the correctional officer and direct her to a safe location. As a result, Moore alleges that he became a target of the Latin Counts.

Over the next four years, Moore was transferred to a number of different correctional facilities. During that period, Moore was attacked twice by other inmates who were also allegedly members of the Latin Counts. After the latter of these two attacks, Moore apparently continued to serve his sentence for another ten years without incident. Then, in 2010, when he was housed at the Michigan Reformatory ("RMI") in Ionia, Michigan, Moore discovered that another prisoner had gained possession of some weapons. This inmate was also a member of the Latin Counts. Undeterred, Moore informed prison officials about the weapons. As a result, Moore learned that he was again a target of the gang.

On June 12, 2010, Moore was attacked with a shank and sliced from "inside [his] right ear down the right side of his neck toward the throat area," requiring twenty-three to twenty-five stitches. (R. 70-8, Critical Incident Report, PageID #322.) After recovering from his injuries, Moore was transferred to the Marquette Branch Prison ("MBP"). Upon his arrival, the prison convened a meeting of the Security Classification Committee, on which Defendants Kenneth Niemisto, a residential unit manager at the prison, and Shane Place, an assistant deputy warden, served. During this meeting, Moore informed Niemisto and Place that he feared for his safety because he was being targeted by the Latin Counts. However, Moore was placed in general population instead of protective segregation or some other more secure environment.

On March 11, 2011, during his incarceration at MBP, Moore was assaulted in the prison kitchen by another inmate, who punched him repeatedly. Defendants Niemisto and Place were among those individuals provided copies of the resulting Assault Investigation Report, which

also explained that Moore thought he was targeted because he had provided information to prison officials about a possible hit on an officer.

Approximately one month later, on April 24, 2011, Moore was attacked again while in the prison auditorium. During this attack, another inmate struck Moore in the face and neck repeatedly and punctured Moore's right eye with a pencil. Moore needed surgery as a result of this attack to remove the pencil lead lodged in the bone behind his eye. During the period between the prison riot in 1995 and this final attack, Moore had requested protection from prison officials at least fifty times.

Based on the incident involving the pencil, on October 29, 2012, Moore filed a complaint in district court against twenty-eight MDOC Defendants pursuant to 42 U.S.C. § 1983. Moore's complaint asserted claims for violations of his First and Eighth Amendment rights, as well as various state law claims. One Defendant was voluntarily dismissed, and the remaining Defendants moved for summary judgment. Following a Report and Recommendation issued by the Magistrate Judge and objections filed by Defendants, the district court granted summary judgment to eleven Defendants. The parties then stipulated to the dismissal of seven more Defendants, as well as to one of the claims.

On March 15, 2016, the nine remaining Defendants, including Niemisto and Place, the two Defendants relevant to this appeal, moved again for summary judgment. Among other grounds, Defendants moved for summary judgment based on qualified immunity. At a hearing held on June 3, 2016, the district court granted summary judgment to all Defendants on the First Amendment retaliation claim, as well as the state law claims for gross negligence and intentional infliction of emotional distress. The district court further granted the motion for summary judgment on Moore's Eighth Amendment claim, based on the prison official's failure to protect

Moore from attacks by other prisoners, as to three Defendants, denied it as three others, and took it under advisement as to Niemisto and Place, as well as one other Defendant, Matthew Macauley. (*Id.* at 1071–72.) The district court entered an order to that effect on June 6, 2016. A few days later, on June 13, 2016, the district court issued an opinion granting summary judgment to Macauley, but denying summary judgment to Niemisto and Place on Moore's Eighth Amendment claim. This timely appeal followed.[1]

## DISCUSSION

Defendants Niemisto and Place moved for summary judgment claiming they were entitled to qualified immunity on Moore's Eighth Amendment claim alleging that they failed to protect him from the violence inflicted by other prisoners. "Qualified immunity protects government officials sued under § 1983 from damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kindl v. City of Berkley*, 798 F.3d 391, 398 (6th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Moore asserts that Defendants violated his right to be protected from violence inflicted at the hands of other prisoners. This right has been well-established since before the events giving rise to Moore's claim. This Court has held that:

> The [E]ighth [A]mendment, which prohibits infliction of "cruel and unusual punishment," encompasses the proscription of "deliberate indifference" to the serious needs of prisoners. *See, e.g.*, *Estelle v. Gamble*, 419 U.S. 97 102–05 (1976). On several occasions, we have held that "deliberate indifference" of constitutional magnitude may occur when prison guards fail to protect one inmate

---

[1] The notice of appeal also stated that Defendants James Alexander, Chad LaCount, and Lincoln Marshall were appealing the district court's order denying them qualified immunity. However, at oral argument, Defendants' counsel conceded that the notice of appeal for these three Defendants was untimely and, as a result, abandoned their appeal. Therefore, the only Defendants to consider at this stage of the proceedings are Niemisto and Place.

from an attack by another. *See, e.g.*, *Roland v. Johnson*, 856 F.2d 764, 769–70 (6th Cir. 1988); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988).

*Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990) (footnote omitted). The Supreme Court later clarified that right, holding that the Eighth Amendment encompasses a duty for prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

To establish a violation of that right, Moore has "the burden of presenting evidence from which a reasonable juror could conclude that the individual defendants were deliberately indifferent to a substantial risk of serious harm to [him] and that they disregarded that risk by failing to take reasonable measures to protect him." *Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016) (citing *Farmer*, 511 U.S. at 842). This test encompasses "both an objective and a subjective component." *Id.* (citing *Farmer*, 511 U.S. at 835–38.) The objective component requires proof that "absent reasonable precautions," Moore was "exposed to a substantial risk of serious harm." *Id.* (citation omitted). The subjective component requires Moore to establish that "(1) 'the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner,' (2) the official 'did in fact draw the inference,' and (3) the official 'then disregarded that risk.'" *Id.* (quoting *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)).

This Court generally has jurisdiction over "appeals from all final decisions of the district courts," including collateral orders. 28 U.S.C. § 1291; *see also Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016). An order denying qualified immunity is considered a final, appealable order "because it is conclusive, separable from the merits of the action, and, as the purpose of qualified immunity is to provide officers with '*immunity from suit* rather than a mere defense to

liability,' is effectively unreviewable on appeal from a final judgment." *Brown*, 814 F.3d at 443–44 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526–29 (1985)).

However, we can only review a denial of qualified immunity insofar as "the appeal presents a 'neat abstract issue[] of law.'" *Kindl*, 798 F.3d at 398 (quoting *Johnson v. Jones*, 515 U.S. 304, 317 (1995)). "A circuit court's jurisdiction over denials of qualified immunity 'does not extend to appeals that merely quibble with the district court's reading of the factual record, as opposed to appeals that challenge the legal premises of the district court's decision.'" *Brown*, 814 F.3d at 446 (quoting *Leary v. Livingston Cty.*, 528 F.3d 438, 441 (6th Cir. 2008)). Therefore, for this Court to exercise jurisdiction over an appeal of a district court's denial of qualified immunity, "the defendant appealing a denial of qualified immunity must concede the plaintiff's facts." *Id.* at 844 (citing *Johnson*, 515 U.S. at 319–20). Failure to concede the plaintiff's version of the facts results in this Court lacking jurisdiction over the appeal. *Younes v. Pellerito*, 739 F.3d 885, 888 (6th Cir. 2014) (citing *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011)). Moreover, "[m]ere conclusory statements that the officers construe the facts in the light most favorable to the plaintiff cannot confer jurisdiction upon this Court." *Thompson*, 656 F.3d at 368.

In this case, Defendants claim that they are conceding the facts in the light most favorable to Moore for the purposes of this appeal. However, in reality, Defendants' arguments are predicated on rejecting Moore's deposition testimony. Defendants claim that the issue they present on appeal is "whether it is clearly established that a correctional official must provide protection where a prisoner makes vague and ambiguous statements about his safety, but does not submit a written request for protection." (Defs.' Br. at 23.) However, as is clear from this framing of the issue, Defendants are debating whether there is sufficient evidence for a jury to

conclude that they actually drew an inference about the risk to Moore's safety based on Moore's complaints. Indeed, Defendants repeatedly refer to the "vague nature" of Moore's fears and his "vague allegations in the absence of a formal written request for protection." (*Id.* at 25.) Moreover, they argue that, "[t]o the extent that Moore had any contact with [Defendants], they were fleeting and distant in time." (*Id.*)

This characterization stands in marked contrast to Moore's version of the facts, as supported by his deposition testimony, that he relayed his fears to both Defendants. Indeed, as Moore testified, Niemisto and Place both participated in the initial security screening when he arrived at MBP after being attacked at RMI. At this meeting, Moore informed the prison staff that he had just been stabbed and that he continued to fear for his safety. Niemisto even admitted that he was aware that Moore feared gang activity in prison, especially that of the Latin Counts, though Niemisto claimed that Moore had downplayed the extent of his fear. Furthermore, when Moore was subsequently attacked in the kitchen by another prisoner, Defendants received the incident report.

Moore also testified that, over the course of his imprisonment, he asked the prison staff for protection over fifty times at the various prisons where he was incarcerated. He also stated that he filled out written requests for protection at MBP and at another prison. Furthermore, Moore wrote a letter to the Directors of MDOC, after the March 11, 2011 beating, asking for protection because he feared for his safety.

We construe Defendants' appeal as arguing the factual issue of whether Defendants were sufficiently aware of the danger to Moore from other prisoners such that they may be liable for violating Moore's Eighth Amendment rights. Indeed, because Defendants argue that the issue on appeal relates to Moore's failure to file written requests, but Moore testified that he did, in fact,

submit such requests, this appeal essentially involves a factual dispute. As explained above, we lack jurisdiction to consider factual disputes on an interlocutory appeal concerning qualified immunity. *See Johnson*, 515 U.S. at 313. We therefore dismiss this appeal for lack of jurisdiction.

**CONCLUSION**

For the reasons stated above, we **DISMISS** Defendants' appeal for lack of jurisdiction, inasmuch as Defendants have failed to concede the facts in the light most favorable to Moore.