NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0091n.06

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JACK NEWBERRY | ) | **FILED** |
| | ) | Feb 23, 2018 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| W.B. MELTON, SHANNON HARVEY, DEBBIE | ) | UNITED STATES DISTRICT |
| DECK, ASHLEY DECK, RODNEY PHILLIPS, and | ) | COURT FOR THE MIDDLE |
| OVERTON COUNTY, TENNESSEE | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH, SUTTON, and BUSH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.  Plaintiff-Appellee Jack Newberry ("Newberry") was held in the Overton County Detention Facility (the "Jail") from January 25, 2013, through March 12, 2014. He is epileptic and, as such, had many seizures while in the Jail. He claims that during his time there, those seizures increased in frequency, intensity, and duration. Newberry further claims that the Jail staff's response to his worsening condition was constitutionally inadequate, as judged by the rigors of the Eighth Amendment. On that basis, he filed a claim under 42 U.S.C. § 1983. The defendants—various employees of the Jail—filed a motion for summary judgment, arguing that they were entitled to qualified immunity. The district court denied that motion and this interlocutory appeal followed. Because Newberry has failed to show that these defendants were deliberately indifferent to his condition, we reverse.

## I.   BACKGROUND

In 2013, Jack Newberry was arrested on charges of intent to manufacture methamphetamine and several related offenses. While awaiting trial on those charges, he was held at the Jail.[1] Newberry, an epileptic, has experienced grand mal seizures, also known as tonic-clonic seizures, for most of his life. Newberry's fellow inmates testified that during his seizures, his eyes rolled back, his body arched into a U-shape, and he began to convulse, often repeatedly banging his head on the ground.

After being admitted to the Jail, the medical staff gave Newberry a physical examination. Newberry informed the medical staff that he was epileptic and that he was taking Tegratol (an anticonvulsant), Prozac (an antidepressant), Dexilant (an acid reflux medication), and potassium supplements.

The Jail has contracted with a separate medical services provider to give its inmates medical care. Under this agreement, inmates have access to a nurse every day and access to a physician once per week.  If an inmate wishes to see a nurse for any reason, he fills out a "Sick Call" and the nurse will see him the next time she is at the jail.

During the course of his stay at the Jail, Newberry had lots of seizures. The parties disagree over how many seizures he actually had—many were reported; however, Newberry contends that he had numerous seizures that went undocumented. According to Newberry, his seizures increased in severity and in frequency over the course of his time at the Jail. As the district court summarized, Newberry's complaint alleges that the Jail staff was deliberately indifferent to his serious medical needs by failing to assist him during his seizures, failing to provide basic first aid for his injuries resulting from seizures, failing to relocate him within the

---

[1] He pled guilty to these charges in August 2013 while incarcerated at the Jail and continued to serve his sentence there until March 2014.

prison (or to another facility entirely), and failing to send him to a doctor for further evaluation. Newberry, more specifically, complained that he should have been given different medication and that he was denied his potassium supplements.

In his complaint, Newberry named six defendants: (1) Overton County; (2) W.B. Melton, the Sheriff of Overton County; (3) Shannon Harvey, the Jail Administrator; (4) Rodney Phillips, a corrections officer in the Jail; (5) Debbie Deck, one of the nurses serving the Jail; and (6) Ashley Deck, another nurse serving the Jail. He sued defendants Melton, Harvey, and Phillips ("Jail Defendants") in both their official and individual capacities. The district court dismissed the official capacity suits because Overton County was already a named defendant. The Jail Defendants moved for summary judgment, arguing, among other things, that they were entitled to qualified immunity and that Newberry's complaint could not proceed because he had not yet exhausted his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). The district court denied the Jail Defendants' motion, noting that there were still unresolved issues concerning the "Defendants' actions, job duties, and knowledge regarding Newberry's epilepsy," rendering summary judgment inappropriate.

The Jail Defendants appealed the denial of summary judgment on their qualified immunity claims. The suit is still ongoing in the district court as to the remaining defendants.

## II.    JURISDICTION

Newberry argues that this court lacks jurisdiction to hear the Jail Defendants' appeal because they have not conceded his version of the facts. He is correct that our jurisprudence requires such an admission. *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995); *Brown v. Chapman*, 814 F.3d 436, 444 (6th Cir. 2016) ("[T]he defendant appealing a denial of qualified immunity must concede the plaintiff's facts."). But Newberry fails to indicate which facts the Jail

Defendants have not conceded. Without any obvious factual disputes of this nature, we may exercise jurisdiction over these claims. To the extent that there are any discrepancies or ambiguities in the parties' stories, we assume Newberry's facts to be true, as is required under our summary judgment standard. *See Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013). Taking Newberry's factual assertions to be true, we answer only the legal question: Does his story amount to a viable Eighth Amendment deliberate indifference claim?

However, the Jail Defendants' exhaustion argument is not ripe for our review. This is an interlocutory appeal, specifically limited to the Jail Defendants' claims of qualified immunity. A district court's denial of qualified immunity is a reviewable final order, *see Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), but the rejection of an exhaustion argument of this sort is not, *see Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744, 752 (6th Cir. 2015). Accordingly, we only consider the Jail Defendants' claims of qualified immunity here.

## III. STANDARD OF REVIEW

We review the district court's denial of summary judgment on the claims of qualified immunity de novo. *Key v. Grayson*, 179 F.3d 996, 999 (6th Cir. 1999). Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If "a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Stoudemire*, 705 F.3d at 565 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[W]e view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citation omitted). "In the qualified immunity context, 'this usually means adopting . . . the plaintiff's version of the facts.'" *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). In order to withstand a motion for summary judgment based on a claim of qualified immunity, a plaintiff

must "present evidence sufficient to create a genuine issue as to whether the defendant in fact committed the acts that violated the law." *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994).

## IV.    ANALYSIS

A government official is entitled to qualified immunity and is thus shielded from § 1983 liability if his actions did not violate a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Accordingly, considering a claim of qualified immunity has two steps: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Richmond v. Huq*, 879 F.3d 178, 196 (6th Cir. 2018) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005)). We need only address the first inquiry here, as Newberry has not adequately alleged a violation of his constitutional rights.

Newberry contends that the Jail Defendants violated his Eighth Amendment rights. The Eighth Amendment, which prohibits cruel and unusual punishment, grants prison inmates a constitutional right to medical care. *See* U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). In turn, "deliberate indifference to [a prisoner's] serious medical needs" amounts to an Eighth Amendment violation. *Estelle*, 429 U.S. at 104.

Deliberate indifference claims must satisfy both an objective and a subjective component. The objective component requires a plaintiff to show "the existence of a 'sufficiently serious' medical need." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component requires a plaintiff to show that the defendant has "a sufficiently culpable state of mind in denying medical care." *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). This requires more than mere negligence. Instead, a deliberate indifference claim must show that a state official "recklessly

disregard[ed]" a "substantial risk of serious harm." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (quoting *Farmer*, 511 U.S. at 836).

### A. Objective Component: Serious Medical Need

The Jail Defendants first argue that Newberry's claims must fail because he has not alleged an objectively serious medical need. Specifically, they contend that Newberry must present medical evidence confirming that the Jail's treatment had some adverse effect on him. To make this argument, the Jail Defendants rely on our decision in *Napier v. Madison Cty., Ky.*, 238 F.3d 739 (6th Cir. 2001). It is true that, in *Napier*, we held an inmate complaining about a delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* at 742 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Insofar as Newberry complains about the Jail Defendants' "failure to treat [his] condition adequately," *Napier* applies, and he failed to produce verifying medical evidence. *Blackmore*, 390 F.3d at 898. However, "*Napier* does not apply to medical care claims where facts show an *obvious need* for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore*, 390 F.3d at 898 (emphasis added). Newberry's condition—characterized by frequent, often lengthy, and aggressive convulsions—is sufficiently obvious that it does not require additional verifying medical evidence. Newberry's seizures resulted in bruises and cuts on his head, vomiting, and an inability to breathe. Those manifestations satisfy this court that his condition is the type that would alert ordinary people as requiring medical attention.[2]

---

[2] Perhaps for these reasons, other courts treat a complete failure to respond to epilepsy and seizures associated with it as objectively serious medical needs without any analysis. *See, e.g.*, *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998); *Jolly v. Badgett*, 144 F.3d 573, 573 (8th Cir. 1998); *Vandermolen v. Chamberlin*, No. 14-CV-06113, 2016 WL 4098656, at *4 (W.D. Ark. June 30, 2016).

For these reasons, Newberry satisfies the objective component of the deliberate indifference analysis. That leaves only the subjective component of these claims, to which we now turn.

## B. Subjective Component: Culpable State of Mind

### 1. W.B. Melton

The Jail Defendants are each subject to liability only in their individual capacities. As such, Newberry must allege facts indicating that Melton "at least implicitly authorized, approved, or knowingly acquiesced in [some] unconstitutional conduct." *See Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (quoting *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). There are no such facts in this record.

Newberry has failed to present any facts suggesting that Melton was indifferent to his medical needs, regardless of whether he knew about those needs. In his amended complaint, Newberry claims that Melton "refused to provide assistance" to him and "failed to ensure that [he] receive any medical treatment whatsoever." But Melton was not responsible for patrolling the prison and assisting prisoners in need, so his failure to physically assist Newberry cannot be a basis for liability. Nor was Melton responsible for getting Newberry to seek treatment. Indeed, the Jail encourages prisoners to seek out medical assistance and examinations independently through the use of Sick Call forms. Moreover, if Newberry's complaint is that he was denied access to a physician (and that such a denial is somehow attributable to Melton), the record plainly proves that he is incorrect, as he saw the physician—Dr. Deavers—more than once while in the Jail.

The only action that Melton took in this case was to deny Newberry's appeal on a grievance form wherein Newberry complained to Shannon Harvey that he was denied ibuprofen

and a bag of ice after a seizure. Harvey responded to the grievance by explaining that it was something Newberry needed to bring to the attention of the medical staff, and Melton reinforced that opinion by signing the form when Newberry appealed. That action, alone, is insufficient to show that Melton was deliberately indifferent to Newberry's condition.

Moreover, Newberry has not provided any evidence that Melton even knew that his condition was worsening. He relies on two pieces of evidence to support the idea that Melton was aware of his medical needs. The first was a grievance, filed on October 27, which alerted Melton to the fact that Newberry had experienced a seizure. But that grievance, alone, did not apprise Melton of the fact that Newberry felt his seizures were getting worse. The second is Newberry's testimony that his mother and sister tried to call Melton to complain about Newberry's treatment. But Newberry admits that his mother and sister were never able to get in contact with Melton. Because there is no evidence to support the fact the Melton knew about Newberry's medical needs, he could not have been deliberately indifferent to them. *See Comstock*, 273 F.3d at 703. For these reasons, Melton is entitled to qualified immunity

### 2. Shannon Harvey

Similarly, Shannon Harvey is entitled to summary judgment on her qualified immunity claim because Newberry has failed to show that she acted with a sufficiently culpable state of mind. In his amended complaint, Newberry claims that Harvey "failed to ensure that Mr. Newberry receive any medical treatment whatsoever." On appeal, Newberry narrows that argument somewhat, claiming that Harvey was aware of his "deteriorating" health and that "he should be transferred to a hospital" but that she "refused to verify underlying facts" and refused to transfer him.

Harvey, as the Jail Administrator, was clearly aware of Newberry's condition. She received both inmate grievances and medical requests that alerted her to the fact that he was having seizures. The question is whether, with that knowledge, she did or did not do anything that demonstrated deliberate indifference to it.

Newberry relies on a few interactions with Harvey to support his cause of action against her. First, he claims that she denied his request to be moved to the Jail's minimum security wing on September 1, 2013. He was moved to the maximum security wing for showing his middle finger to one of the cameras in the Jail. But, Newberry felt it was safer for him in minimum security because there were cameras monitoring the inmates there. Moreover, there were more inmates to keep an eye on him and larger cells that were safer for him when he did seize. Harvey responded that minimum security was full, but that she would consider moving him in the future. She never moved him back to minimum security, though. This does not amount to deliberate indifference. The inmates in the maximum security wing were monitored, and the record shows that Newberry, while in maximum security, was tended to when he did have seizures. Moreover, Harvey ensured that he was in a two-man cell so that he had someone to help him when he was seizing, and later placed him in a six-man cell. Nothing about these actions demonstrates deliberate indifference to his medical needs.

Next, Newberry claims that Harvey should have ensured that he received adequate medical treatment for his worsening seizures. Specifically, he claims that after his cellmate submitted a grievance claiming that Newberry had been seizing all weekend and that he had stopped breathing a number of times, she did nothing to respond. Around this time period, Harvey received three grievances related to Newberry. On October 13 and 15, she received grievances from Newberry's cellmate, Nicholas Franklin. On October 14, Newberry filed his

own grievance. In response to each of these grievances, Harvey explained that she was not in charge of medical treatment and that he should seek assistance from the medical staff. She also reiterated that there was nothing she could do to prevent his seizures, and that they simply wanted to keep Newberry safe while he was seizing. And Newberry actually saw a doctor on October 16, the day after the last of these three grievances was filed. After a similar grievance on October 27, Harvey again explained that it was the medical staff's job to address his medical complaints.

Harvey's actions in this context do not amount to deliberate indifference. As noted above, the inmates are responsible for going to the doctor and are able to see a nurse every day, if they so choose. Harvey knew that Newberry was seeing the medical staff and was justified in relying on their medical decisions. *See Smith v. Cty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

For these reasons, Newberry has failed to demonstrate that Harvey acted with a sufficiently culpable mind and has thus failed to allege that she was deliberately indifferent to his medical needs. Harvey is also entitled to qualified immunity.

### 3. Rodney Phillips

Newberry's claim against Phillips relates exclusively to one incident. While the precise facts arising from that incident are unclear, we take Newberry's version of it (or at least as much as he has provided this court) to be true.

On January 9, 2014, Newberry had a seizure in his cell in the maximum security wing. He was alone in his cell at the time, having been disciplined for eating food in the common area.

-10-

Phillips and two other officers responded to the incident. From this first seizure, Newberry sustained various minor injuries—bruises and swelling. While the other two officers tended to Newberry, Phillips called Nurse Debbie Deck, who told Phillips to move Newberry to a booking cell where he could be more easily monitored. Phillips decided to move Newberry to the booking cell by leaving him on his mat and dragging the mat to the cell. Once in the booking cell, Phillips gave Newberry a second mat for additional support. Finally, he ordered a "medical watch" whereby an officer was required to check on Newberry every ten to fifteen minutes and report his status, in writing. Phillips had at least one more seizure while left in the booking cell, and awoke from that seizure to find himself face-down on a drain in the floor, having injured his eye.

Nothing in that story gives rise to a viable deliberate indifference claim. While he did not argue as much in his brief, Newberry claimed at oral argument that Phillips's decision to drag him on a mat was deliberately indifferent (and that, instead, he should have called 911). That decision was eminently reasonable, though. Phillips explained that he chose the mat for fear that Newberry might fall out of a wheelchair or that he could injure himself if strapped to a backboard were he to seize again. And after transporting Newberry to the floor (rather than the elevated bunk in the cell, which he could fall off of during a seizure) of the booking cell—where it would be easier to monitor him more frequently—Phillips gave Newberry an extra mat for support in the event that he did seize again. Further, he ordered a medical watch to be sure that Newberry had frequent monitoring. These decisions, simply put, are reasonable attempts to protect and help Newberry. Perhaps Newberry would have liked *constant* surveillance, rather

than the periodic surveillance he received.[3] But even if that is true, at most, it amounts to a claim of negligence. To support a deliberate indifference claim, Newberry must demonstrate more than negligence—he must show that Phillips "recklessly disregard[ed]" a risk of serious harm. *Comstock*, 273 F.3d at 703. These facts do not rise to that level. Phillips responded to a difficult situation and took actual affirmative steps to protect Newberry. Those actions cannot possibly demonstrate deliberate indifference to Newberry's medical needs. As such, Phillips is also entitled to qualified immunity.

## V.  CONCLUSION

At bottom, the Jail Defendants were coping with an imperfect situation. Newberry suffered (and continues to suffer) from a chronic and unpredictable condition. The Jail Defendants could not prevent or even anticipate his seizures; they could only hope to minimize the resulting harms from those seizures. And this record demonstrates that they did exactly that—they took reasonable steps to try to protect Newberry. Because Newberry has not alleged conduct that can support the subjective component of a deliberate indifference claim for any of these three defendants, they are entitled to qualified immunity. The district court's denial of summary judgment on this basis is **REVERSED**. The case is **REMANDED** for proceedings consistent with this opinion.

---

[3] Or, he may argue (as he did at oral argument) that the Jail Defendants should have called 911 every time he had a seizure. Newberry has offered no authority to support a claim that failing to call 911 in the event of an epileptic seizure amounts to deliberate indifference. We cannot hold Phillips to a constitutional standard never before articulated. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (holding that a plaintiff must "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated [the Constitution]" in order to present a clearly defined constitutional right).